511 A.2d 516

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Lynda Marie DEE.**

**Misc. Docket (Subtitle BV) No. 33, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 15, 1986.

---

· Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel, for Attorney Grievance Com'n of Maryland.

M. Gordon Tayback, Baltimore, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with this Court on behalf of the Attorney Grievance Commission seeking disciplinary action against Lynda Marie Dee, who was admitted to the Bar of this State on December 10, 1981. We shall dismiss the charges.

Bar Counsel alleged violation of Disciplinary Rules 1–101(A) and 1–102(A)(1), (3), (4), (5), and (6) in regard to

Respondent's application for admission to the Maryland Bar.[1]

## I

Pursuant to Rule BV9, the matter was referred to one of the judges of the Circuit Court for Baltimore City. He filed a comprehensive report with us in which he stated in part:

"The petitioner specifically contends that during 'the period from the summer of 1979 to August 1981, the Respondent was involved in the purchase of controlled dangerous substances ... for her own use and for resale to others.' The Petitioner further contends that the Respondent, in answering question no. 17 under part 2 of her application for registration as a candidate for admission to the Bar of Maryland, failed to disclose that involvement. Question no. 17 asks, 'Are there any unfavorable incidents in your life, whether at school, college, law school, business or otherwise, which may have a bearing upon your character or fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers?' The Respondent's answer to that question was 'no'. An evidentiary hearing was held on December 17, 1985 with the following findings of fact:

### "FINDINGS OF FACT

"The Respondent, who presently resides at 2502 Eutaw Place, Apartment 7AA, in Baltimore City, is a 33 year old lawyer who was admitted to the Bar of Maryland on December 10, 1981. She presently maintains a law office at 1023 Cathedral Street, Baltimore, Maryland 21201. She received her Bachelor of Arts degree in history from the University of Baltimore in June, 1977 and was enrolled at the University of Baltimore Law School in December, 1977, and graduated therefrom in 1981. While Ms. Dee was a student, and subsequent thereto, she

---

1. The text of the relevant rules is set forth in the trial judge's opinion.

worked as a waitress at the Harvey House, as an intern in the State's Attorney's Office, as an intern with the Federal Public Defender and as an employee in the Attorney General's Office. On July 29, 1980, the Respondent filed her application for registration as a candidate for admission to the Bar of Maryland. She took the bar examination in 1981. After having received notice that she had passed the Maryland Bar examination and prior to her being formally admitted to the Maryland Bar, Ms. Dee was interviewed by the late W. Emerson Brown for the character committee. During that interview, she revealed to Mr. Brown the fact that she had been given probation before judgment relative to the charge of possession of heroin when she was approximately eighteen (18) years of age, and that the record of that charge had been expunged. She also submitted to Mr. Brown a written report from her psychiatrist who had treated her during her teenage years relative to her dependency upon illegal drugs. She revealed that she had been acquitted several years ago relative to a charge of false alarm. Her discussion with Mr. Brown during the interview was a rather extensive one. However, no question was asked or explanation given during that interview regarding the Respondent's answer to question no. 17 of her application.

"As a teenager, the Respondent indulged in the use of heroin and was treated by a psychiatrist relative to her use of that substance. At the approximate age of eighteen (18), she was charged with the possession of heroin, entered a guilty plea, and was given probation before judgment. The probationary period was successfully completed and the records were subsequently expunged. She was not involved in drug activity or drug usage between 1970 and the summer of 1979. In 1979, she became somewhat despondent when she learned that Nicky Parks, with whom she had been romantically involved was 'gay'. He indicated to her a need for his getting away. Thus, he spent the summer in Wash-

ington, D.C. By the end of the summer, Parks was visiting her apartment, accompanied by several of his male friends who were also 'gay'. They brought drugs with them and not only used the drugs, but insisted that the Respondent try them. Being upset over the entire situation, the Respondent, rather than dealing with it forthwith, attempted to run away from it, whereupon she again commenced using illegal drugs. She became friendly with those persons who had accompanied Nicky Parks, including Phil Lazarr, from whom the drug MDA (which was being used by the Respondent and Nicky) could be obtained. She would, therefore, from time to time, obtain the drug from Phil Lazarr for her own use and for the use of Nicky Parks, with whom she, at that time, still maintained some type of friendship. She also, during this period, occasionally used the drugs ameyl nitrate and ethyl chloride. In the meantime, the Respondent had been introduced to Enid Feinberg, who was also a user of drugs. Inasmuch as Ms. Feinberg had a car and the Respondent did not, an arrangement was made whereby Ms. Feinberg would drive the Respondent to Washington to get the drugs. As compensation for being driven to the source, the Respondent would get enough of the drug (MDA) to enable Enid Feinberg to have some for her own use.* The purchases made by the Respondent were limited to the drug MDA while Enid Feinberg, in her own right, made purchases of ethyl chloride and ameyl nitrate. Distribution of the drug, on the part of the Respondent, was limited to small quantities for her friends Nicky Parks and Enid Feinberg. This activity, on the part of the Respondent, was terminated during the summer of 1980, and she was not so involved on July 29, 1980 when she submitted her application for registration as a candidate for admission to the Bar of Maryland.

---

* Actually, the place of purchase was in Alexandria, Virginia, just outside of Washington, D.C.

"In December, 1981, after Ms. Dee had been admitted to the Bar, she received a subpoena to testify before the Federal Grand Jury. In the meantime, Nicky Parks and Phil Lazarr had been arrested in August, 1981 in connection with their drug activities. Ms. Dee, upon learning of the arrest by way of a telephone call from Nicky Parks, notified Ralph Brown, a friend of Nicky who was also a friend of Ms. Feinberg. About one day after the arraignment of Nicky and Phil, Ms. Feinberg contacted Ms. Dee. During the course of the conversation, Ms. Feinberg stated that she had gone to Florida with Nicky and Phil to pick up approximately two (2) pounds of cocaine. She, thereupon, expressed fear as to what might happen, and also expressed concern relative to what and how much information Nicky might reveal about their joint ventures, she having also been a seller of drugs.

"After Ms. Dee received her subpoena to testify before the Federal Grand Jury, she arranged, with the assistance of Gerald Kroop, Esquire, to cooperate with the Drug Enforcement Administration and the U.S. Attorney's Office and was granted immunity from prosecution. She did in fact cooperate with the federal authorities. This included telephoning Enid Feinberg from the U.S. Attorney's Office and meeting with Enid Feinberg with a concealed recording device which enabled the federal authorities to monitor the conversation.

"As a result of the federal investigation, including Ms. Dee's cooperative efforts, Enid Feinberg was subsequently indicted and convicted as were Nicky Parks and Phil Lazarr.

"When Enid Feinberg learned that the Respondent had been an agent for the federal government and in part responsible for her conviction, she became angry with Ms. Dee, as did her mother, and had vowed to get even with Ms. Dee. Consequently, Ms. Feinberg's mother filed a complaint with the Attorney Grievance Commission.

"The Respondent did not learn of the complaint against her until she wrote to the Attorney Grievance Commis-

sion while she was residing in New York. She had gone to New York as a result of her husband having obtained employment there and had taken the New York Bar examination in which she was successful. (The couple has subsequently resumed residence in Baltimore.) The State of New York does not require evidence of the applicant's character and fitness until the applicant has passed the bar examination. The Respondent's intention, therefore, was to provide the New York authorities with information relative to whether or not any complaint had been lodged against her by any grievance commission. It was the response to her inquiry which informed her that the present grievance had been filed with the Attorney Grievance Commission of Maryland.

"The Respondent, subsequent to her application for admission to the Maryland Bar, has not been involved in any drug or drug related activity, any illegal acts, or any conduct which would reflect unfavorably on her fitness to practice law in the State of Maryland. In fact, she is regarded by a cross section of the legal profession as a competent, conscientious and reputable practitioner.

## "CONCLUSIONS OF LAW

"Although the Respondent, in answer to question no. 17 of her application, honestly believed that inasmuch as she had firmly refrained from all drug activity, her failure to reveal her drug dealings during part of 1979 and of 1980 did not constitute a violation, it is concluded that such activities 'may have a bearing upon' one's fitness to practice law. This was, therefore, a materially false statement and, therefore, constituted a violation of Disciplinary Rule 1–101(A), which provides that

'A lawyer is subject to discipline if he has made *a materially false statement* in, or if he has deliberately failed to disclose a material fact requested in connection with his application for admission to the bar'. (Emphasis added)

"It is further concluded that the Respondent has not violated Disciplinary Rule 1–102(A) which provides as follows:

'(A) A lawyer shall not:

    (1) Violate a Disciplinary Rule.

    (2) Circumvent a Disciplinary Rule through actions of another.

    (3) Engage in illegal conduct involving moral turpitude.

    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

    (5) Engage in conduct that is prejudicial to the administration of justice.

    (6) Engage in any other conduct that adversely reflects on his fitness to practice law.' "

## II

Bar Counsel filed no exceptions to the above findings and conclusions. Respondent has filed exceptions to both the trial judge's findings of fact and conclusions of law.

### (a)

Respondent excepts to the trial court's failure to find that she affirmatively answered Questions 11 and 14(b) of the Character Questionnaire, although she was under no legal obligation to do so. In light of the documents admitted into evidence and the stipulation of the parties at trial, we agree that Respondent did affirmatively answer those inquiries. Her exception is sustained.

### (b)

Respondent further excepts to the trial court's conclusion that she violated Disciplinary Rule 1–101(A) by making a materially false statement because, as she puts it, the court concluded that she *honestly believed* that her failure to reveal her drug involvement did not constitute a violation of DR 1–101(A), and because her affirmative responses to the direct questions presented in Questions 11 and 14(b) made it unnecessary for her to answer the vague inquiries of Question 17 in the affirmative."

Respondent's contention is that she disclosed the unfavorable incidents in her life through her interviews with the late W. Emerson Brown for the Character Committee and through information supplied to him by the Respondent's psychiatrist.

She similarly contends that if it is not necessary to disclose expunged convictions, it should not be necessary to list uncharged criminal conduct, "especially where the Respondent already alluded to the circumstances in her affirmative responses to Questions 11 and 14(b)."

Question 11 of the application reads as follows:

"11. The following is a complete record of all criminal proceedings (including traffic violations other than an occasional parking violation) to which I am or have ever been a party: (if 'None' so state)

"(Note: Do not report here, or in answer to Question 17, any arrest or court proceedings in Maryland, the record of which was expunged pursuant to law)."

To this question, Respondent replied, "None". At her character interview, she disclosed that she had been given probation before judgment on a charge of possession of heroin when she was 18 years old. She was not obligated to reveal this information.

Question 14(b) asks:

"Are you now, or have you within the past 10 years ever been, addicted to, or have you undergone treatment for the use of narcotics or drugs or the excessive use of intoxicating liquors?

———————

Yes or No

"If so, attach statement giving full explanation including name and address of doctor and institution."

To this inquiry, Respondent replied, "Yes." Respondent's original attached statement has been misplaced since the filing of her application in 1980. However, on December 17,

1985, Respondent's psychiatrist wrote a letter to the trial judge which confirmed that he had "previously submitted to the Character Committee ... a letter regarding Linda [sic] Dee's emotional difficulties and drug use problems."

We agree with the Respondent's contention that by responding "No" to Question 17, she did not make a materially false statement or deliberately fail to disclose a material fact in connection with her application for admission to the bar. Through her discussions with the late Emerson Brown in her character interview and her revelations made pursuant to Question 14 of the bar application, we believe Respondent has effectively disclosed any drug involvement in her past. Thus, Respondent's exception is sustained.

## III

By concluding that Respondent did not make a materially false statement in answering Question 17 on her application for admission to the Maryland Bar, we have exonerated her from any violation of DR 1–101(A) as charged by Bar Counsel. Because Bar Counsel has not sustained the burden of proving that violation, the petition must be dismissed.

PETITION DISMISSED; COSTS TO BE PAID BY ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.