Attorney Grievance Comm'n v. Gregory Allen Slate, Misc. Docket AG No. 5, September Term, 2017

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who knowingly failed to disclose during bar application process that, in civil case to which lawyer was party, trial court found that lawyer had engaged in dishonesty and misconduct, and lawyer falsely stated to Bar Counsel that he had disclosed all required information during bar application process. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(a), 8.1(b) (Bar Admission and Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Baltimore City
Case No. 24-C-17-001903

Argued: February 1, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 5

September Term, 2017

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GREGORY ALLEN SLATE

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed:

This attorney discipline proceeding involves a lawyer who knowingly failed to disclose during the bar application process that, in a civil case to which the lawyer was a party, a trial court found that the lawyer had engaged in dishonesty and misconduct, and the lawyer falsely stated to Bar Counsel that he had disclosed all required information during the bar application process.

Before becoming a member of the Bar of Maryland, Gregory Allen Slate, Respondent, initiated a civil case concerning alleged copyright infringement, claiming that hidden camera footage that he had recorded was used without his authorization. The trial court dismissed the case on the ground that Slate had engaged in bad-faith litigation conduct. The trial court found that Slate: fabricated a letter and submitted it to the trial court in bad faith; gave deposition testimony that was either perjurious or, at least, intentionally misleading; and repeatedly attempted to abuse the discovery process through such actions as attempting to fraudulently collect evidence, providing discovery materials in a soiled envelope that strongly smelled of excrement, improperly videotaping his own deposition testimony, and providing voluminous irrelevant and misleading materials. Slate filed a motion for reconsideration. The trial court denied the motion, and found that Slate's filings in connection with the motion showed a continuing pattern of omissions and obfuscations.

Slate did not attach copies of the trial court's opinions to his bar application or provide any information about the findings therein. In response to Question 11 on the bar application, which called for information about cases to which an applicant had been a party, Slate disclosed basic facts about the case, such as the circumstance that an appeal

was pending at the time. Slate, however, did not disclose the trial court's opinions or the findings therein. Significantly, Slate responded "No" to Question 18—a "catchall question" that calls for any negative information that was not requested by, or given in the responses to, any of the other questions.[1]

After submitting his bar application, Slate falsely affirmed under oath that all of the facts in his bar application remained correct. Slate did not supplement his bar application with the trial court's opinions or the findings therein. Nor did Slate disclose the trial court's opinions or the findings therein during the character interview. Nor did Slate disclose the information during a meeting with the co-chairs of the Character Committee for the Fourth Appellate Judicial Circuit ("the Character Committee").[2] Consistent with the Character Committee's co-chairs' recommendation, the State Board of Law Examiners ("the SBLE") cleared Slate for admission without a hearing. This Court, unaware of the trial court's findings of dishonesty and misconduct, admitted Slate to the Bar of Maryland.

Within a year, a Maryland lawyer became aware of the trial court's opinions, and filed a complaint against Slate with Bar Counsel. Subsequently, Bar Counsel requested from Slate a response to the complaint. In a written response, Slate stated that he had disclosed all required information during the bar application process.

_____

[1]See, e.g., Memorandum from Bedford T. Bentley, Jr., Secretary, State Board of Law Examiners, to First-Year Law Students at University of Baltimore School of Law (May 18, 2009), available at http://law.ubalt.edu/downloads/law_downloads/ Admiss_MSBE_Bar_Letter.pdf [https://perma.cc/62NS-LNVK] ("There is a catchall question on the [bar] application requiring disclosure of any matter [that] reflects adversely on character and [is] not called for specifically by other questions on the [bar] application.").

[2]The Fourth Appellate Judicial Circuit is comprised of Prince George's County.

- 2 -

On March 30, 2017, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Slate, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1 (Bar Admission and Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).[3]

On April 4, 2017, this Court designated the Honorable Jeannie Jinkyung Hong ("the hearing judge") of the Circuit Court for Baltimore City to hear this attorney discipline proceeding. On October 11 through 13, 2017, the hearing judge conducted a hearing. On November 16, 2017, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Slate had violated MLRPC 8.1(a), 8.1(b), 8.4(c), 8.4(d), and 8.4(a).

On February 1, 2018, we heard oral argument. For the below reasons, we disbar Slate.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

### The ABC Case

Before attending law school, Slate worked as a freelance investigative journalist. In Fall 2007, Slate recorded footage as part of a hidden-camera investigation in Chicago. On

_____

[3]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. We will refer to the MLRPC because most of the misconduct at issue occurred before this change.

September 16, 2009, in the United States District Court for the District of Columbia, Slate sued ABC News, Inc., ABC News Interactive, Inc., and Disney/ABC International Television, Inc. (together, "ABC"), initiating Slate v. Am. Broad. Cos., Inc. ("the ABC Case"). In the complaint, Slate alleged that ABC had committed copyright infringement by using his hidden camera footage without his authorization.

ABC filed a motion for summary judgment and a motion to dismiss for bad-faith conduct of litigation. In an Order and a separate Memorandum Opinion dated April 23, 2013, the United States District Court for the District of Columbia granted the motion for summary judgment, and, in an alternative ruling, granted the motion to dismiss "as a sanction for [Slate]'s persistent course of bad-faith litigation conduct." Slate v. Am. Broad. Cos., Inc., 941 F. Supp. 2d 27, 53 (D.D.C. 2013). The Court found that a letter[4] that Slate had submitted was "not authentic and ha[d] been presented to [the] Court in bad faith." Slate, 941 F. Supp. 2d at 47. The Court found that the letter included a "glaring historical inconsistency" and was "fabricated after the fact[.]" Id. The Court found that Slate's testimony at a deposition "was likely perjurious, or[,] at the very least[,] intentionally

---

[4]The letter was dated August 21, 2006, and was purportedly sent by Slate to an ABC News producer. See Slate, 941 F. Supp. 2d at 30-31. In the letter, Slate stated that he "was confused when" ABC produced a story with his footage because it was his "understanding . . . that ABC and its affiliates were not interested in his footage[,] and he accepted [the producer's] reimbursement proposal because he believed that his footage would retain its exclusivity and value." Id. at 31 (ellipsis in original) (brackets omitted). Slate stated that he was "an independent freelance journalist[,]" and that he and ABC "should craft an explicit licensing agreement, ratified by both of [them], before [his] footage is broadcast[.]" Id. Slate also stated: "In terms of compensation, I do not work for free or for expenses only [because] my recent success, including receiving an Emmy Award for Investigative Journalism, ha[s] substantially elevated the value of my work." Id.

misleading." Id. at 48 n.22.  The Court stated:

> [Slate] engaged in a course of conduct, which demonstrates that he does not take seriously his obligation to litigate in good faith.  Most notably, [] Slate has repeatedly attempted to abuse the discovery process, and his persistent course of conduct in this regard strongly suggests that he acted willfully. This conduct includes, but is not limited to: (1) attempting to fraudulently collect evidence; (2) producing discovery documents in a soiled envelope that had the strong odor of excrement; (3) improperly videotaping his own deposition testimony; and (4) producing voluminous amounts of irrelevant and misleading materials.

Id. at 50 (footnotes omitted).  The Court also found that Slate "lack[ed] respect for the federal judicial process." Id. at 51.

Slate filed a motion for reconsideration, as well as two other motions in which he requested that the Court alter or amend the April 23, 2013 Order.  In an Order and a separate Memorandum Opinion dated December 20, 2013, the Court denied the motions.  See Slate v. Am. Broad. Companies, Inc., 12 F. Supp. 3d 30 (D.D.C. 2013).  The Court stated that Slate's "briefing in connection with his pending motion for reconsideration continue[d] to exhibit the clear and convincing pattern of omissions and obfuscations that warranted granting [ABC's] motion to dismiss for bad-faith litigation conduct in the first place." Id. at 42 (citations omitted).

Slate noted an appeal.  In an amended notice of appeal dated January 3, 2014, Slate stated: "Notice is also given, that [Slate] hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the judgment (Dkt. 102 and Dkt. 103) of this Court entered on the 23rd day of April, 2013 in favor of [ABC] against [Slate]."

In a *per curiam* opinion dated November 18, 2014,[5] the United States Court of Appeals for the District of Columbia Circuit affirmed the dismissal of the ABC Case for bad-faith conduct of litigation, concluding:

> The [D]istrict [C]ourt's factual findings of misconduct were not clearly erroneous; and the [D]istrict [C]ourt did not abuse its discretion in determining that dismissal was warranted in light of the numerous instances of misconduct it cited and the materiality of some of that misconduct to adjudication of central issues in the case.

Slate v. Am. Broad. Cos., Inc., 584 F. App'x 2, 3 (D.C. Cir. 2014) (per curiam) (citations omitted).

**Websites About Slate**

While working as a freelance investigative journalist, Slate became associated with a man named Diop Kamau.[6] Slate and Kamau had a falling-out, after which Kamau began maintaining multiple websites that included information about Slate's personal and professional life.[7] Such information included the Memorandum Opinions in the ABC Case ("the Opinions"). At the disciplinary hearing, Slate testified that, because of Kamau's websites about him, he knew that he could never conceal the Opinions.

**Discussions Before Slate Submitted His Bar Application**

In August 2012, Slate began attending the University of Baltimore School of Law.

---

[5]In providing the date of the opinion, the hearing judge inadvertently referred to November 18, 2017.

[6]Kamau is a principal of a nonprofit organization called the Police Complaint Center. See Slate, 941 F. Supp. 2d at 29. Slate worked with the Police Complaint Center during the hidden-camera investigation that gave rise to the ABC Case. See id.

[7]The hearing judge found that Kamau's websites made clear "the sheer animosity between" Kamau and Slate.

In his third year, Slate became concerned about the impact of his litigation history on his bar application. In April 2014, Slate told Jeffrey Shipley, the SBLE's Secretary, that he had been involved in "contentious" litigation. Slate, however, did not inform Shipley of the Opinions or the findings therein. Slate asked about the impact of his litigation history on his bar application. Shipley advised Slate to disclose his entire litigation history, and "to read and follow the directions" on the bar application.

Also during his third year, Slate told Claudia Diamond, the Assistant Dean of Academic and Writing Support at the University of Baltimore School of Law, that he had been involved in "contentious" litigation. Slate e-mailed Diamond regarding certain disclosures on his bar application. Slate, however, did not inform Diamond of the Opinions or the findings therein.

At the disciplinary hearing, Slate testified that Shipley, Diamond, and various other individuals advised him not to disclose the Opinions in his bar application. Slate blamed these individuals for his failure to disclose the Opinions in his bar application. The hearing judge found: "Perhaps the individuals did, in fact, navigate [Slate] toward nondisclosure on his bar application; nevertheless, [Slate]'s attempt to shift the blame does not absolve him of his responsibility to prove his character to practice law, and to do so without knowingly omitting material facts[.]" (Citations omitted).

**Slate's Bar Application**

On May 16, 2014, Slate signed his bar application, which included his responses to the Character Questionnaire. At the time, Question 11(a) of the Character Questionnaire stated:

> The following is a complete list of all suits in equity, action[s] at law, administrative proceedings, suits in bankruptcy or other statutory proceedings, civil citations, matters in probate, lunacy, guardianship, and every other judicial proceeding of every nature and kind, except divorce or criminal proceedings, to which I am or have been a party (If "None," so state)[.]

Question 11(a) also required the applicant to provide details regarding each civil case to which the applicant had been a party, including the case number, the filing date, the court's name and address, the date of trial, the date of disposition, and the disposition.[8]

In his bar application, Slate disclosed that he had been involved in thirty-three criminal cases, and had been a party to forty-three civil cases, including the ABC Case. Slate disclosed the ABC Case's name, the filing date, the court's name and address, the date of trial, and the date of disposition. Next to "Disposition[,]" Slate wrote: "Dismissed pending appeal in the United States Court of Appeals for District of Columbia Circuit[.]" Slate responded "No" to the question "Are you [the] subject of any continuing court order?" Slate also responded "No" to the question "Was the judgment entered against you?" Slate responded "No" to Question 11(b), which stated: "Have any judgments ever been entered against you?" Slate also responded "No" to Question 11(c), which stated: "I have attached to this Application certified copies of all judgments listed in 11(b), whether satisfied or unsatisfied, and listed below the names and present addresses (with zip codes) of the holders."

---

[8]At the disciplinary hearing, Shipley testified that, as a result of the events that arose from Slate's bar application, Question 11 was modified, such that it now expressly requires an applicant to attach any court document that may bear on his or her character and fitness to practice law.

Slate responded "No" to Question 18, the catchall question, which stated as follows:

Have there been any circumstances or unfavorable incidents in your life, whether at school, college, law school, business or otherwise, which may have a bearing upon your character or your fitness to practice law, not called for by the questionnaire or disclosed in your answers?

If so, give details, including any assertions or implication of dishonesty, misconduct, misrepresentation, financial irresponsibility, and disciplinary measures imposed (if any) by attaching a supplemental statement. You are not required to disclose, in response to this question, any juvenile proceeding or any criminal proceeding expunged pursuant to Maryland law. Maryland law does not permit expungement of convictions.[9]

Slate signed Question 20, which stated:

**Affirmation of Applicant's Duty of Full, Candid Disclosure and Applicant's Continuing Duty to Submit Written Notice of Changes to Information Sought by the Application:** I understand that the required disclosures in this questionnaire are of a continuing nature. I hereby acknowledge my duty to respond fully and candidly to each question or required disclosure and to ensure that my responses are accurate and current at all times until I am formally admitted to the Bar of the State of Maryland. I will advise the [SBLE] immediately and in writing of any changes in the information disclosed in or sought by this questionnaire, including any pertinent facts developed after the initial filing of this application and the facts of any incident occurring subsequent to the initial filing of this application.

I do solemnly declare and affirm under the penalties of perjury, that the matters and facts set forth in the foregoing application are true and accurate.

I have made and retained a copy of this entire application for my records and for use in the event that the original is lost in the mail or during the character investigation.

(Emphasis in original). Slate did not attach the Opinions to his bar application or summarize the Opinions in his bar application. Nor did Slate ever supplement his bar

---

[9]At the disciplinary hearing, Shipley testified that Question 18 has not been substantively modified since Slate took the Bar Examination.

application with the Opinions.

The hearing judge found that, while testifying at the disciplinary hearing, Slate "distinguished mandatory disclosures and attachments on the bar application from the ABC Case." Slate disputed that any part of the bar application required him to attach the Opinions. Slate opined that, in light of Question 11(b), the word "judgments," as used in Question 11(c), refers only to money judgments, and thus did not apply to the Opinions.

The hearing judge observed that, in the notice of appeal in the ABC Case, Slate referred to one of the Opinions as a "judgment." In any event, the hearing judge did not address whether Question 11 required Slate to disclose the Opinions. Instead, the hearing judge concluded that Question 18—the catchall question—required Slate to disclose the Opinions. The hearing judge determined that, by responding "No" to Question 18, Slate intentionally failed to disclose material information that reflected adversely on his character.

### Character Interview and Meeting with Character Committee's Co-Chairs

On May 19, 2014, the SBLE received Slate's bar application, and, on the same date, Slate graduated from the University of Baltimore School of Law. Slate passed the July 2014 Bar Examination. On November 2, 2014,[10] Slate signed an Affirmation by General Bar Applicant, in which he affirmed under oath that all of the facts in his bar application remained correct. The hearing judge found that Slate's affirmation was false.

Slate's bar application was sent to the Character Committee for the Fourth Appellate

---

[10]The hearing judge inadvertently referred to November 2, 2017.

Judicial Circuit. On November 18, 2014, as part of the character and fitness investigation, Joseph A. Compofelice, a member of the Character Committee, interviewed Slate. The hearing judge noted that Compofelice is responsible for following up on moral and ethical issues identified by the SBLE. If an applicant's character and fitness is called into question, Compofelice is responsible for recommending that the Character Committee's co-chairs, William C. Brennan, Jr. and Roger C. Thomas, schedule a hearing before a three-member panel.

At the disciplinary hearing, Compofelice testified that, at the character interview, he questioned Slate about all forty-three civil cases, including the ABC Case, that he had disclosed in his bar application. Compofelice testified that Slate disclosed the ABC Case and its disposition. Specifically, Slate disclosed that the United States District Court for the District of Columbia had granted summary judgment and dismissed the ABC Case due to discovery violations, and that an appeal was pending. During the character interview, however, Slate did not disclose the Opinions or the findings therein. Compofelice testified that, had he known of the Opinions and the findings therein, "at a minimum[,]" he would have recommended a hearing. Compofelice testified that he "absolutely believe[d]" that Slate should have disclosed the Opinions in his bar application.

Based on the information in Slate's bar application and his representations during the character interview, Compofelice conditionally recommended his admission to the Bar of Maryland. Compofelice recommended, however, that Brennan and Thomas review Slate's bar application and conduct a follow-up meeting regarding his litigation history.

On November 20, 2014, pursuant to Compofelice's recommendation, Brennan and

Thomas conducted an informal meeting with Slate. The meeting's purpose was to determine whether to hold a hearing, or recommend Slate's admission without a hearing. At the disciplinary hearing, Brennan and Thomas testified that they questioned Slate about all forty-three civil cases, including the ABC Case, that he had disclosed in his bar application. Brennan and Thomas testified, however, that there was no discussion of the Opinions or the findings therein. Slate discussed the disposition of the ABC Case in general, without disclosing the substance of the findings in the Opinions. Slate also indicated that an appeal was pending in the ABC Case.[11] Brennan and Thomas testified that Slate's failure to disclose the Opinions or the findings therein in his bar application and during the meeting inhibited the Character Committee's and the SBLE's efforts to investigate Slate's character and fitness. Brennan and Thomas testified that, had Slate disclosed the Opinions or the findings therein, the decision-making process would have significantly differed.

Concerned with the volume of civil cases to which Slate had been a party, Brennan asked Shipley whether litigiousness alone was a basis for denying admission. According to the hearing judge, Shipley responded that litigiousness alone does not warrant a hearing. Based on Shipley's response, as well as Slate's representations in his bar application and at the meeting, Brennan and Thomas recommended that Slate be admitted to the Bar of Maryland without a hearing. Shipley cleared Slate for admission without a hearing. On

---

[11]Contrary to Slate's assertion, the United States Court of Appeals for the District of Columbia Circuit had disposed of the appeal two days earlier, on November 18, 2014. See Slate, 584 F. App'x 2.

December 18, 2014, this Court admitted Slate to the Bar of Maryland.

Slate testified that he was under the impression that the Character Committee and the SBLE would investigate the ABC Case. The hearing judge found that, while testifying, Slate attempted to shift to the Character Committee and the SBLE the burden of verifying the facts in his bar application, including the ABC Case. While testifying, Slate referred to Maryland Rule 19-203(a)(1)(B), which states in pertinent part: "On receipt of an application forwarded by the [SBLE], the Character Committee shall . . . verify the facts stated in the questionnaire[.]"

Slate testified that he was under the impression that Kamau's websites about him would be investigated, as he told Compofelice, Brennan, and Thomas about Kamau's websites about him. In summarizing Slate's testimony at the disciplinary hearing, the hearing judge stated that Slate believed that, by telling Compofelice, Brennan, and Thomas about Kamau's websites about him, he constructively disclosed the Opinions to the Character Committee and the SBLE. The hearing judge found that Slate "distracted the SBLE and the Character Committee with extraneous information concerning . . . Kamau, his career as an investigative journalist, and his landlord-tenant litigation."[12]

The hearing judge found that Slate had multiple opportunities to disclose and/or discuss the Opinions and the findings therein before, during, and after completing his bar

_____

[12]The hearing judge did not make any other findings of fact regarding Slate's landlord-tenant litigation.

- 13 -

application.[13]  The hearing judge found, however, that, throughout the bar application process, Slate knowingly omitted the Opinions and the findings therein.  The hearing judge found that Slate "used benign terms to describe" the ABC Case's disposition and the findings in the Opinions.  The hearing judge found that Slate "concealed" the Opinions "in an attempt to deceive" the Character Committee and the SBLE so that he would get admitted to the Bar of Maryland.

### Complaint Against Slate and His Response to Bar Counsel

George A. Weiss, a member of the Bar of Maryland, assisted another lawyer who represented someone whom Slate had sued as a *pro se* plaintiff.  Weiss visited one of Kamau's websites about Slate.  Weiss used Public Access to Court Electronic Records, or PACER—the federal courts' e-filing system—to confirm information about Slate, including the existence of the ABC Case, the Opinions, and the findings therein.

On November 9, 2015, Bar Counsel received from Weiss a complaint against Slate.[14]  In the complaint, Weiss raised various concerns about Slate's character and fitness prior to his admission to the Bar of Maryland, including the findings in the Opinions.

On December 16, 2015, Bar Counsel sent Slate a letter advising him of the

---

[13]The hearing judge stated that Slate had multiple opportunities to disclose and/or discuss the Opinions and the findings therein "before, during, and after the [bar] application process."  In a footnote, the hearing judge specified that these opportunities were his discussion with Shipley, his communications with Diamond, his bar application, the character interview, the meeting with Brennan and Thomas, and the supplements that he submitted to the SBLE.  Accordingly, in the above quotation, the hearing judge was referring to opportunities before, during, and after completing his bar application, as all such opportunities occurred during the bar application process.

[14]Before then, Weiss had never met, or directly communicated with, Slate.

complaint, and stating that Bar Counsel had "not yet determined whether this matter should be classified as a formal docketed complaint[,] or is one [that] is not disciplinary in nature[.]" Bar Counsel stated that a "written response" would help "make this decision."

On January 5, 2016, Slate sent a written response to Bar Counsel's letter, stating in pertinent part: "[T]he [complaint] speculates that I may have failed to disclose relevant information in connection with my application to the bar in violation of [MLRPC] 8.1. . . . I complied fully with [MLRPC] 8.1 because I disclosed everything necessary and more to the Character Committee during the review process."[15]

### Aggravating Factors and Mitigating Factors

The hearing judge found that Slate's misconduct was aggravated by a dishonest or selfish motive, as Slate concealed material information to get admitted to the Bar of Maryland. The hearing judge also found that Slate's misconduct was aggravated by a refusal to acknowledge his misconduct's wrongful nature. The hearing judge stated that Slate "does not believe he was required to disclose, discuss, or [provide a] supplement" with, the Opinions and the findings therein. Subsequently, the hearing judge found: "This clearly shows [Slate]'s impenitence and lack of respect for the SBLE, the Character Committee, and" the hearing judge.

The hearing judge found that Slate had not established any mitigating factors.[16]

_____

[15]The hearing judge inadvertently stated that Slate's response to Bar Counsel was dated December 5, 2016.
   [16]At the disciplinary hearing, as a witness for Slate, Barmak Naraghi, a recent graduate of the George Washington University Law School who is not a lawyer, testified that he assisted Slate with the bar application process. Naraghi testified that Slate was

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Chanthunya, 446 Md. 576, 588, 133 A.3d 1034, 1041 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (Citations omitted)); Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

**DISCUSSION**

**(A) Findings of Fact**

Bar Counsel does not except to any of the hearing judge's findings of fact. Slate raises eight exceptions as to the hearing judge's findings of fact. We overrule all of Slate's exceptions, most of which pertain to factual allegations that are immaterial to this attorney discipline proceeding.

First, Slate excepts to the hearing judge's "failure to find that" he disclosed his

---

"anxious" during the bar application process. The hearing judge found, however, that Naraghi "did not proffer any substantive evidence regarding the merits of this" attorney discipline proceeding.

- 16 -

appeal of the Opinions in Question 11 on his bar application. Slate is mistaken. The hearing judge found that, in his response to Question 11(a), with regard to the ABC Case, next to "Disposition[,]" Slate wrote: "Dismissed pending appeal in the United States Court of Appeals for District of Columbia Circuit[.]"

Second, Slate excepts to the hearing judge's "failure to find that" he disclosed six civil cases that were related to the ABC Case. Slate contends that the other civil cases were relevant because they "involve[d] and disclose[d] matters concerning the material allegations in the" Opinions. Slate's contention is a red herring. In the Petition for Disciplinary or Remedial Action, Bar Counsel did not allege that Slate improperly failed to disclose information about a civil case other than the ABC Case. Instead, Bar Counsel's charges against Slate arose entirely from his failure to disclose the Opinions and the findings therein. This attorney discipline proceeding turns on whether Slate improperly failed to disclose the Opinions and the findings therein, regardless of whether the ABC Case was related to other civil cases that Slate disclosed. Slate's alleged disclosure of other civil cases is immaterial.

Third, Slate excepts to the hearing judge's finding that he did not attach the Opinions to his bar application, or supplement his bar application with the Opinions. Slate alleges that, in letters to the SBLE, he disclosed the existence of two civil cases in which copies of the Opinions were filed with trial courts. Even if true, Slate's allegations are completely consistent with the hearing judge's finding that he failed to attach, or supplement his bar application with, the Opinions.

Fourth, Slate excepts to the hearing judge's finding that he did not disclose the

Opinions to Diamond. Slate notes that Diamond did not testify at the disciplinary hearing, and that his own testimony was the only evidence of in-person communications between himself and Diamond. Slate contends that, accordingly, there was no evidence that he did not disclose the Opinions to Diamond. Slate completely ignores Respondent's Exhibits 7 through 12, which was a series of e-mails that Slate and Diamond exchanged regarding certain disclosures on his bar application. The hearing judge found that, in his e-mails to Diamond, Slate did not disclose the Opinions or the findings therein. In any event, it does not matter whether Slate disclosed the Opinions or the findings therein to Diamond, who was not a member of the Character Committee or the SBLE.

Fifth, Slate excepts to the hearing judge's finding that, after he told Shipley that he had been involved in "contentious" litigation and asked about the impact of his litigation history on his bar application, Shipley simply advised him to disclose his entire litigation history, and "to read and follow the directions" on the bar application. Slate alleges that Shipley advised him to submit only the documents that the bar application directed applicants to submit, and told him that a member of the Character Committee would investigate his disclosures in his bar application. Slate notes that Shipley testified with regard to Slate's litigation history: "I told [Slate] that[,] certainly[,] his history would be investigated by his character investigator, that he needed to disclose his history, that his history would be investigated." Slate observes that Shipley also testified: "I think that we had a discussion about what documents needed to be attached[,] and[,] in that context[,] we talked about attaching the documents that the instructions printed in the bar application told you to attach." Slate notes that, when asked whether he told Slate not to submit

documents that the bar application did not direct applicants to submit, Shipley responded: "I think that's part and parcel of the gist of the conversation that we had, that you need to answer the questions in the [bar] application."

We overrule Slate's exception. The portions of Shipley's testimony that Slate quotes are completely consistent with the hearing judge's finding that Shipley told Slate to follow the directions in the bar application. This attorney discipline proceeding turns on which documents the bar application required Slate to submit, and the evidence demonstrates that Shipley advised Slate to follow the instructions on the bar application. The core issue in this attorney discipline proceeding is whether the bar application required Slate to submit the Opinions or the findings therein. As discussed below, it did.

Sixth, Slate excepts to the hearing judge's "finding concerning '[t]he [i]nvestigation' of the facts asserted in" his bar application. Slate contends that Compofelice was unaware that he had been assigned as Slate's character investigator, and that the Character Committee was obligated to "verif[y] the facts stated in the questionnaire" in Slate's bar application under Maryland Rule 19-203(a)(1)(B). Slate alleges that Compofelice testified that, if anyone was assigned as Slate's character investigator, he was not so assigned. Slate notes that, when asked: "[Y]ou didn't do anything to verify the [ABC Case's] disposition[,] as described on [Slate's] bar application[,] that it had been dismissed pending appeal, correct?", Compofelice responded: "No, nor am I required to."

We overrule this exception. Even if Slate's characterization of Compofelice's testimony is accurate, it does not matter whether Compofelice was aware that he had been

assigned as Slate's character investigator. What matters is that Compofelice interviewed Slate as part of the character and fitness investigation. Nor is it material whether Compofelice believed that he was obligated to verify the ABC Case's disposition. What is material is that, during the character interview, Slate failed to disclose or discuss the Opinions or the findings therein.

Seventh, Slate excepts to the hearing judge's findings "regarding the [b]ar [a]pplication's questions and directives concerning 'judgments' and [Slate]'s responses thereto." Slate contends that the hearing judge implied that the Opinions were "judgments," as that word is used in Question 11(a), which stated in pertinent part: "Was the judgment entered against you?" Slate argues that, if the Opinions were not "judgments," then Question 11(a) is irrelevant to this attorney discipline proceeding. Slate notes that, when he completed his bar application, there was no express requirement for an applicant to attach any court document that may bear on his or her character and fitness to practice law. Slate asserts that an e-mail that he sent to Diamond while he was completing his bar application demonstrates that he did not believe that the Opinions were "judgments" against him.

Slate's arguments are beside the point. In a footnote, the hearing judge observed that, in the notice of appeal in the ABC Case, Slate referred to one of the Opinions as a "judgment." At no point, however, did the hearing judge find that the Opinions constituted "judgments," or determine that Question 11 required Slate to disclose the Opinions or the findings therein. In other words, the hearing judge did not resolve Slate's contention that the Opinions did not constitute "judgments" because they were not "money judgments."

Instead, the hearing judge concluded that Question 18—the catchall question—required Slate to disclose the Opinions. As discussed below, we agree with the hearing judge's conclusion. Accordingly, whether Question 11 required Slate to disclose the Opinions or the findings therein is not at issue.

Finally, Slate excepts to the hearing judge's "failure to find that[,] when asked[,]" he provided copies of the Opinions to bar admission authorities in other jurisdictions whose applications requested such documents.[17] At the risk of pointing out the obvious, in this attorney discipline proceeding, Slate has not been charged with failing to be candid in his applications for admission to bars of other jurisdictions. To the extent that Slate contends that, because he provided the Opinions to bar admission authorities in other jurisdictions whose applications requested such information, this circumstance establishes he was not withholding the Opinions in his application for admission to the Bar of Maryland, Slate is wrong. Although Question 18 did not specifically require that the Opinions be attached to a bar application, Question 18 asked that an applicant give the "details, including any assertions or implication of dishonesty, misconduct, [and] misrepresentation[.]" Question 18 plainly required disclosure of the Opinions or the information contained therein. That Slate may have disclosed the Opinions to bar admission authorities in other jurisdictions does not affect the outcome of this case.

---

[17]The hearing judge's opinion does not indicate whether Slate is a member of any bar other than the Bar of Maryland. At oral argument, in response to a question from the Court, Slate stated that he is not barred in any other jurisdiction.

## (B) Conclusions of Law

Slate excepts to all of the hearing judge's conclusions of law. Bar Counsel excepts to the hearing judge's conclusion that Slate violated MLRPC 8.1(b) by misrepresenting to Bar Counsel that he had disclosed all required information during the bar application process. Bar Counsel contends that Slate's misrepresentation about having disclosed all required information constituted a violation of MLRPC 8.1(a) instead of MLRPC 8.1(b). Bar Counsel argues that, in addition to the violation of MLRPC 8.1(a), Slate violated MLRPC 8.1(b) by failing to supplement his bar application with, or tell the Character Committee about, the Opinions or the findings therein. Bar Counsel also excepts to the hearing judge's failure to conclude that, in addition to violating MLRPC 8.4(c) by concealing the Opinions and the findings therein, Slate separately violated MLRPC 8.4(c) by misrepresenting to Bar Counsel that he had disclosed all required information during the bar application process. For the below reasons, we sustain Bar Counsel's exceptions and overrule Slate's exceptions.

### MLRPC 8.1 (Bar Admission and Disciplinary Matters)

MLRPC 8.1 states:

An applicant for admission . . . to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

> (a) knowingly make a false statement of material fact; or

> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

- 22 -

The hearing judge concluded that Slate violated MLRPC 8.1(a) by responding "No" to Question 18, the catchall question. Immediately after quoting MLRPC 8.1(b), the hearing judge stated:

> As discussed above, [Slate] did not supplement his bar application or his discussions with the Character Committee with the [] Opinions or the findings therein. [Slate] then knowingly made a false statement of material fact by misrepresenting to Bar Counsel that he "disclosed everything necessary and more to the Character Committee during the review process." Thus, [the hearing judge concludes] by clear and convincing evidence that [Slate] violated MLRPC 8.1(b).

Bar Counsel does not except to the hearing judge's conclusion that Slate violated MLRPC 8.1(a) by responding "No" to Question 18, the catchall question. But, Bar Counsel contends that, by making a misrepresentation to Bar Counsel, Slate violated MLRPC 8.1(a), not MLRPC 8.1(b), as the hearing judge concluded. Bar Counsel argues that Slate also violated MLRPC 8.1(b) by failing to disclose the Opinions or the findings therein in a supplement to his bar application or during the character interview. We agree with Bar Counsel on both counts.

Clear and convincing evidence supports the hearing judge's conclusion that Slate violated MLRPC 8.1(a) by responding "No" to Question 18, the catchall question. Question 18 stated in pertinent part:

> Have there been **any** circumstances or unfavorable incidents in your life, whether at school, college, law school, business or otherwise, which **may** have a bearing upon your character or your fitness to practice law, not called for by the questionnaire or disclosed in your answers? If so, give details, including **any assertions or implication of dishonesty, misconduct, [and] misrepresentation** . . . by attaching a supplemental statement.

(Emphasis added) (paragraph break omitted). By its plain language, Question 18 is

designed to be broad. Its express purpose is to require an applicant to disclose "any" information that "may having a bearing upon" the applicant's character or fitness, where that information is not called for by, or disclosed in the applicant's responses to, the character questionnaire's other questions. For example, if information about an applicant's litigation history may having a bearing upon the applicant's character or fitness, and that information is not called for by, or disclosed in the applicant's answer to, Question 11, then Question 18 unequivocally requires that information. Additionally, Question 18 specifically requires an applicant to disclose information related to "any assertions or implication of dishonesty, misconduct, [and] misrepresentation[.]"

Here, unquestionably, the Opinions and the findings therein would have had a bearing upon Slate's character or his fitness to practice law, and constituted information that was related to dishonesty and misconduct. Clearly, the Opinions included "implication[s] of dishonesty, misconduct, [and] misrepresentation[,]" which Question 18 specifically called for. Slate's response of "No" to Question 18 plainly constituted a "false statement material fact" under MLRPC 8.1(a). In the Memorandum Opinion dated April 23, 2013, the United States District Court for the District of Columbia dismissed the ABC Case "as a sanction for [Slate]'s persistent course of bad-faith litigation conduct." Slate, 941 F. Supp. 2d at 53. The Court found that Slate had "fabricated" a letter and submitted it to the Court "in bad faith." Slate, 941 F. Supp. 2d at 48, 47. The Court found that Slate's testimony at a deposition "was likely perjurious, or[,] at the very least[,] intentionally misleading." Id. at 48 n.22. The Court found that Slate's conduct "demonstrate[d] that he d[id] not take seriously his obligation to litigate in good faith." Id. at 50. The Court found

that Slate "repeatedly attempted to abuse the discovery process[,]" and that "his persistent course of conduct in this regard strongly suggests that he acted willfully." Id. The Court stated that Slate's misconduct during discovery included "(1) attempting to fraudulently collect evidence; (2) producing discovery documents in a soiled envelope that had the strong odor of excrement; (3) improperly videotaping his own deposition testimony; and (4) producing voluminous amounts of irrelevant and misleading materials." Id. (footnotes omitted). The Court found that Slate "lack[ed] respect for the federal judicial process." Id. at 51. In the Memorandum Opinion dated December 20, 2013, the Court stated that Slate's "briefing in connection with his pending motion for reconsideration continue[d] to exhibit the clear and convincing pattern of omissions and obfuscations that warranted granting [ABC's] motion to dismiss for bad-faith litigation conduct in the first place." Slate, 12 F. Supp. 3d at 42.

The hearing judge's opinion conclusively demonstrates that Slate's response of "No" to Question 18—i.e., his false statement of material fact—was knowing, as required for a violation of MLRPC 8.1(a). The hearing judge found that Slate "**knowingly** omitted the [] Opinions and the findings therein throughout the entirety of the bar application process"; that, "[b]y indicating 'No' to Question 18, [the catchall question, Slate] **knowingly and intentionally** failed to disclose material information reflecting adversely on his character at the time he submitted his bar application and throughout the pendency of the application process"; and that Slate "**knowingly** concealed material information from the SBLE and the Character Committee." (Emphasis added).

Slate's response to Question 11 did not obviate the need for him to disclose the

- 25 -

Opinions and the findings therein in response to Question 18. In response to Question 11, Slate disclosed the ABC Case's name, the filing date, the court's name and address, the date of trial, and the date of disposition. Next to "Disposition[,]" Slate wrote: "Dismissed pending appeal in the United States Court of Appeals for District of Columbia Circuit[.]" Without more, these circumstances—*i.e.*, that Slate was a party to the ABC Case, that the ABC Case was dismissed, and that an appeal was pending in the ABC Case—did not reveal anything about Slate's character. The salient circumstance was that the United States District Court for the District of Columbia had found that Slate had engaged in various instances of dishonesty and misconduct, including fabrication of evidence, attempted abuse of the discovery process, and possible perjury. Slate was obligated to disclose these findings in response to Question 18.

Compofelice, Brennan, and Thomas, *i.e.*, members of the Character Committee, and the SBLE, were not obligated to independently locate copies of the Opinions. "The applicant bears the burden of proving to the Character Committee, the [SBLE], and [this] Court the applicant's good moral character and fitness for the practice of law." Md. R. 19-203(d). With regard to Question 18, the burden is on the applicant to provide all information that may have any bearing on the applicant's character or fitness, and that was not called for, or disclosed in the responses to, the other questions. The applicant does not meet this burden by merely having disclosed, in response to Question 11, the existence of, and basic facts about, a case to which the applicant was a party, where a court has issued an opinion in which the court finds that the applicant engaged in misconduct. This is especially true where, as here, the case in question is merely one of dozens of cases to

- 26 -

which the applicant was a party, thus making it less likely that the Character Committee and the SBLE will focus on any particular case if the applicant does not provide any substantive information about the case.

Contrary to Slate's contention, the applicant's burden under Maryland Rule 19-203(d) is unaffected by Maryland Rule 19-203(a)(1)(B), which states in pertinent part: "On receipt of an application forwarded by the [SBLE], the Character Committee shall . . . verify the facts stated in the questionnaire[.]" In other words, Maryland Rule 19-203(a)(1)(B) does not relieve the applicant of his or her burden to provide all required information in his or her bar application. Maryland Rule 19-203(a)(1)(B)'s use of the phrase "verify the facts stated in the questionnaire" merely refers to the Character Committee's obligation to investigate a bar application to the extent that "it finds necessary or desirable[.]" Such an investigation must at least include "personally interview[ing] the applicant[,]" Md. R. 19-203(a)(1)(A), and "contact[ing] the applicant's references[,]" Md. R. 19-203(a)(1)(B). Under no circumstance is the Character Committee obligated to go on a fishing expedition for evidence of an applicant's misconduct, especially where, as here, in the bar application and the character interview, the applicant furnishes no reason to suspect that such evidence exists. Under Maryland Rule 19-203(d), throughout the entire bar application process, the burden remains on the applicant to prove his or her character and fitness, and to provide all required information.

Slate mistakenly relies on Application of G.L.S., 292 Md. 378, 439 A.2d 1107 (1982), for the proposition that he provided sufficient information in his bar application. In G.L.S., id. at 397, 439 A.2d at 1117, this Court determined that, in a bar application, an

applicant "provided sufficient information to alert the [Character] Committee to the need for further investigation and inquiry." Before attending law school, the applicant was the driver of a getaway car in a bank robbery, pled guilty to armed robbery, and was imprisoned. See id. at 379, 439 A.2d at 1108. In his bar application, the applicant did not list a residence for the years during which he was imprisoned. See id. at 382, 439 A.2d at 1109. In response to Question 11, the applicant listed the month and year of his guilty plea and the name of the court in which he pled guilty, but he did not provide any information next to "Nature of Proceedings" and "Disposition[.]" Id. at 382, 439 A.2d at 1110. During the character interview, the applicant disclosed that he had been convicted of a felony and had been sentenced to ten years' imprisonment. See id. at 382, 439 A.2d at 1110. This Court admitted the applicant to the Bar of Maryland, explaining:

> We recognize that the applicant failed to provide complete information on his [bar] application . . . . We note, however, that he made full disclosure of his criminal conviction and incarceration on his application to law school. On his [bar] application . . . , he provided sufficient information to alert the [Character] Committee to the need for further investigation and inquiry. **When his alleged failure to fully disclose was called to his attention, he conceded that the information he provided was incomplete[,] and then voluntarily provided the requisite information.** Throughout the proceedings[,] he repeatedly asserted that he did not consciously intend to conceal information regarding his criminal activity. Under these circumstances, we cannot conclude that the applicant did not possess a sufficient degree of candor to qualify for admission to the Bar.

Id. at 398, 397, 439 A.2d at 1118, 1117 (emphasis added).

G.L.S. is materially distinguishable because its circumstances demonstrate that the omissions in the applicant's bar application were the result of an oversight, not a deliberate attempt to conceal information. In G.L.S., id. at 382, 439 A.2d at 1110, in his bar

application, the applicant indicated that he had been a party to a case in a certain court in a specified month and year, but did not fill in the blanks regarding the nature of the case or the disposition. When asked about the case at the character interview, the applicant disclosed his guilty plea and sentence. See id. at 382, 439 A.2d at 1110. Before the SBLE, the applicant testified that the omission in his bar application "was an oversight" that occurred because he was in a hurry to complete the application by the filing deadline, not because he intended to conceal his guilty plea. Id. at 383-84, 439 A.2d at 1110-11.

By contrast, here, the hearing judge expressly found that Slate "conceal[ed] material information [] to gain admission to the" Bar of Maryland. Unlike the applicant in G.L.S., Slate did not leave any part of his bar application blank with regard to the ABC Case, which may have prompted further investigation by the Character Committee and/or the SBLE. Instead, with regard to the ABC Case, Slate completely filled in every blank, and then responded "No" to the catchall question, thus indicating that he had provided all required information—when, in fact, he had not. Additionally, unlike the applicant in G.L.S., Slate did not disclose the required information at the character interview. The hearing judge's findings indicate that, in his bar application and discussions with Compofelice, Brennan, and Thomas, Slate refrained from disclosing the Opinions and the findings therein in an attempt to fly under the radar and keep the Character Committee and the SBLE in the dark regarding the findings of his dishonesty and misconduct in the ABC Case.

Slate also mistakenly relies on Attorney Grievance Comm'n v. Dee, 306 Md. 799, 511 A.2d 516 (1986), for the proposition that he effectively disclosed the Opinions. In Dee, id. at 808, 511 A.2d at 520, this Court concluded that an applicant "effectively

disclosed any drug involvement in her past" in her bar application and her character interview. Over a two-year period, the applicant bought illegal drugs for her own use and for resale. See id. at 801, 511 A.2d at 516. In her bar application, the applicant responded "No" to the catchall question. Id. at 801, 511 A.2d at 516. In response to a question regarding whether she had ever been addicted to drugs, the applicant stated "Yes"; the applicant also submitted to the Character Committee a letter that described her drug use. Id. at 807-08, 511 A.2d at 519-20. Additionally, during the character interview, the applicant disclosed that she had received probation before judgment for possession of heroin, and submitted a report from a psychiatrist who had treated her while she was addicted to drugs. See id. at 802, 511 A.2d at 517.

This Court concluded that, by responding "No" to the catchall question, the applicant did not violate MLRPC 8.1's predecessor, which stated: "A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with his application for admission to the bar." Id. at 808, 805, 511 A.2d at 520, 519. This Court explained: "Through her discussions . . . in her character interview and her revelations made pursuant to [the q]uestion [] of the bar application[ that pertained to drug use], we believe [that the applicant] has effectively disclosed any drug involvement in her past." Id. at 808, 511 A.2d at 520.

Dee is materially distinguishable from this case because the lawyer in Dee disclosed her drug use not only in her bar application, but also in her character interview. By contrast, in neither his bar application, nor the character interview, nor the meeting with Brennan

- 30 -

and Thomas, did Slate disclose the Opinions or the findings therein. Unlike the lawyer in Dee, Slate violated MLRPC 8.1(a) by responding "No" to the catchall question and providing no additional information.

We reject Slate's contention that he did not violate MLRPC 8.1(a) because the hearing judge stated that Slate "believed" that he constructively disclosed the Opinions by telling Compofelice, Brennan, and Thomas about Kamau's websites about Slate, and that he "to this day does not believe he was required to disclose, discuss, or supplement" the Opinions or the findings therein. Slate argues that these are findings by the hearing judge that demonstrate that he did not knowingly fail to disclose material information in his bar application.

Slate takes the hearing judge's statements out of context. With regard to both of the statements on which Slate relies, the hearing judge did not determine that Slate had a good-faith, albeit mistaken, belief that he did not need to disclose the Opinions or the findings therein, or that he had constructively done so. In the first instance, the hearing judge merely summarized Slate's contention regarding his alleged constructive disclosure of the Opinions. In the second instance, the hearing judge found that Slate's misconduct was aggravated by a refusal to acknowledge his misconduct's wrongful nature, as demonstrated by his arguments that he had done nothing wrong.

Significantly, the hearing judge's statement that Slate "believed" that he constructively disclosed the Opinions appears under a heading labeled "Respondent." Under that heading, the hearing judge merely summarized Slate's testimony, without finding any part of it credible or not credible. The hearing judge's statement about

constructive disclosure appears at the end of the following paragraph:

> **[Slate] then engaged in a lengthy monologue** which divulged into his pre-law endeavors, including his contentious relationship with [] Kamau. [] Kamau maintains multiple websites for the purpose of publishing information about [Slate].  The websites make pellucid the sheer animosity between [] Kamau and [Slate].  Nevertheless, the content on [] Kamau's websites include[s] the [] Opinions and the findings therein.  Based on the continuous publication by [] Kamau, **[Slate] testified** that he knew the [] Opinions and the findings therein could never be concealed.  **[Slate] further testified** that he informed [] Compofelice, [] Brennan, and [] Thomas about [] Kamau's websites, and was under the impression that the websites would be investigated.  Thus, **[Slate] believed** the [] Opinions were disclosed, at least constructively, to the SBLE and the Character Committee.

(Emphasis added).  In context, it is clear that the hearing judge did not find that Slate believed that he constructively disclosed the Opinions.  Instead, the hearing judge was simply summarizing one part of Slate's testimony, without assessing its credibility.

The hearing judge's statement regarding Slate's belief that he did not need to disclose the Opinions appears under a heading labeled "Mitigation and Aggravating Factors[.]" Under that heading, the hearing judge discussed both mitigating factors and aggravating factors.  The hearing judge's statement regarding Slate's belief that he did not need to disclose the Opinions appears toward the end of the first of the following two paragraphs:

> [The hearing judge] does not find by a preponderance of the evidence that [Slate] established any mitigating factors.  Notwithstanding the disclosure requirement of "judgments" on Question 11, Question 18 unequivocally required [Slate] to disclose the [] Opinions and the findings therein. A review of the [] Opinions reveal[s] the following: bad faith litigation, perjurious testimony, fabrication of evidence, and lack of respect for the federal judicial process. [Slate] failed to disclose, discuss, or supplement the [] Opinions and the findings therein throughout the pendency of the bar application process. In fact, [Slate] to this day does not believe he was required to disclose, discuss, or supplement the [] Opinions and the findings therein to his bar

application.  **This clearly shows [Slate]'s impenitence and lack of respect for the SBLE, the Character Committee, and [the hearing judge].**

The Court of Appeals also delineated certain aggravating factors to consider in determining sanctions.  By clear and convincing evidence, [the hearing judge] finds that [Slate] acted with a dishonest or selfish motive by concealing material information in order to gain admission to the Maryland Bar.  **[Slate] also refuses to acknowledge the wrongful nature of his misconduct, which only exacerbates the serious nature of his MLRPC violations.**

(Emphasis added) (citations omitted).  As this context makes clear, the hearing judge did not find that Slate had a good-faith belief that he did not need to disclose the Opinions or the findings therein.  Instead, the hearing judge simply referred to Slate's contention that he did not need to disclose the Opinions, and determined that Slate's contention demonstrated a lack of remorse and a refusal to acknowledge his misconduct's wrongful nature.

Having determined that the hearing judge correctly concluded that Slate violated MLRPC 8.1(a) by responding "No" to Question 18, the catchall question, we turn to Bar Counsel's contention that, by making a misrepresentation to Bar Counsel, Slate violated MLRPC 8.1(a), not MLRPC 8.1(b).  MLRPC 8.1(a) applies where a lawyer "knowingly make[s] a false statement of material fact[.]"  Meanwhile, MLRPC 8.1(b) applies where a lawyer "fail[s] to disclose a fact necessary to correct a misapprehension known by the [lawyer] to have arisen in the matter, or knowingly fail[s] to respond to a lawful demand for information from" Bar Counsel.

We agree with Bar Counsel that, contrary to the hearing judge's conclusion, Slate's misrepresentation to Bar Counsel that he had fully disclosed all that was required by the bar application constituted a violation of MLRPC 8.1(a), not MLRPC 8.1(b).  In his letter

to Bar Counsel, Slate stated: "I complied fully with [MLRPC] 8.1 because I disclosed everything necessary and more to the Character Committee during the review process." In her analysis as to MLRPC 8.1(b), the hearing judge found that Slate's statement was a "knowing[,] false statement of material fact[.]" A knowing, false statement of material fact to Bar Counsel is a violation of MLRPC 8.1(a), not MLRPC 8.1(b).[18] Thus, we sustain Bar Counsel's exception to the hearing judge's conclusion that Slate violated MLRPC 8.1(b).

That said, we agree with Bar Counsel that Slate violated MLRPC 8.1(b) by failing to disclose the Opinions and the findings therein in a supplement to his bar application, or during the character interview, and thereby failing to correct the misapprehension that he had fully disclosed all relevant information about the ABC Case. In his bar application, Slate did not disclose the Opinions and the findings therein, despite the circumstance that the United States District Court for the District of Columbia found that Slate engaged in multiple instances of dishonesty and misconduct. Despite his failure to disclose the Opinions and the findings therein, Slate answered "No" to Question 18, the catchall question, which called for "circumstances or unfavorable incidents[,]" "including any . . . implication of dishonesty, misconduct, [or] misrepresentation[.]" By failing to disclose the Opinions or the findings therein, and answering the catchall question in the negative, Slate failed to correct, and indeed created or caused, a misapprehension with the Character Committee and the SBLE that the ABC Case contained no information bearing on his

_____

[18]In discussing the violation of MLRPC 8.4(c) below, we explain that Slate's statement to Bar Counsel was, indeed, false.

- 34 -

character and fitness for admission to the Bar. Despite disclosing the existence of the ABC Case on his bar application, Slate never supplemented his bar application with the Opinions and the findings therein. Nor did Slate disclose the Opinions and the findings therein during the character interview, or during his meeting with Brennan and Thomas. In light of the hearing judge's finding that Slate "knowingly concealed material information from the SBLE and the Character Committee[,]" it is clear that Slate violated MLRPC 8.1(b) by "fail[ing] to disclose a fact necessary to correct [the] misapprehension" that he had created.

### MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" MLRPC 8.4(c).

The hearing judge concluded that Slate violated MLRPC 8.4(c) by concealing the Opinions and the findings therein. Bar Counsel does not except to the hearing judge's conclusion, but contends that Slate committed an additional violation of MLRPC 8.4(c) by making a misrepresentation to Bar Counsel. We agree.

Clear and convincing evidence supports the hearing judge's conclusion that Slate violated MLRPC 8.4(c) by concealing the Opinions and the findings therein. Question 18, the catchall question, required Slate to disclose the Opinions and the findings therein. Slate, however, responded "No" to the catchall question. Additionally, Slate never disclosed the Opinions and the findings therein in a supplement to his bar application, during the character interview, or during his meeting with Brennan and Thomas. Both Slate's response to the catchall question, as well as his silence with regard to required information after he submitted his bar application, constituted acts that involved

- 35 -

dishonesty, deceit, and misrepresentation, and violated MLRPC 8.4(c).

Upon our review of the record, we agree with Bar Counsel that Slate violated MLRPC 8.4(c) by making a false statement to Bar Counsel. The hearing judge found that Slate's statement to Bar Counsel—namely, that he fully complied with MLRPC 8.1 by "disclos[ing] everything necessary and more to the Character Committee during the review process"—was a "knowing[,] false statement of material fact[.]" Even a cursory reading of Question 18 shows that the question requests information that is related to dishonesty, misconduct, and misrepresentation. The hearing judge specifically found that Slate "used benign terms to describe" the Opinions and the disposition of the ABC Case. The hearing judge found that Slate concealed the Opinions "in an attempt to deceive" the Character Committee and the SBLE. These determinations support the conclusion that, in advising Bar Counsel that he had disclosed all that was necessary during the bar application process, Slate was untruthful. Stated otherwise, Slate knew at the time that he responded to Bar Counsel that he had been required to disclose the Opinions and the findings therein, but that he had not.

We reject Slate's contention that he did not violate MLRPC 8.4(c) because MLRPC 8.4(c) applies only to conduct in which a lawyer engages after having been admitted to the Bar of Maryland. Insofar as the claim that a lawyer cannot violate MLRPC 8.4(c) by conduct that occurs before the lawyer is admitted to the Bar of Maryland, this Court has held that a lawyer's failure to disclose, or concealment of, material information on the lawyer's bar application constitutes a violation of MLRPC 8.4(c). See Attorney Grievance Comm'n v. Van Dusen, 443 Md. 413, 430, 116 A.3d 1013, 1023 (2015) (This Court

- 36 -

concluded that a lawyer violated MLRPC 8.4(c) where, after being admitted to the Bar of Maryland, the lawyer "continued to conceal his criminal conduct from [the] SBLE, the [Attorney Grievance] Commission, and this Court." This Court stated that the lawyer's "deliberate and continued failure to disclose his misconduct in order to protect his Maryland [law] license [was] conduct involving dishonesty and misrepresentation."); Attorney Grievance Comm'n v. Hunt, 435 Md. 133, 142-43, 76 A.3d 1214, 1219-20 (2013) (This Court upheld a hearing judge's conclusion that a lawyer violated MLRPC 8.4(c) where the lawyer "deliberate[ly and] continual[ly] failed to disclose his criminal activities [that he had engaged in prior to his admission to the Bar of Maryland] to the admissions authority" either during or after the bar admissions process. The hearing judge noted that the lawyer's "omission of such material information was purposeful and calculating with the intent to deceive the admissions authority in their admissions process to avoid the possibility of being denied admission to the Bar.").

In any event, this contention is without merit with respect to the allegation that Slate made a false statement to Bar Counsel. To the extent that Slate contends that he cannot be sanctioned for conduct occurring before he was admitted to the Bar, Slate's statement to Bar Counsel, *i.e.*, the alleged false statement that he provided all information, was made in response to Bar Counsel's inquiry to Slate regarding the complaint. Slate was obviously a member of the Bar at the time that he made this statement.

**MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer

- 37 -

violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Chanthunya, 446 Md. at 602, 133 A.3d at 1049 (cleaned up).

The hearing judge concluded that Slate violated MLRPC 8.4(d) by knowingly concealing material information from the Character Committee and the SBLE, falsely declaring under oath in the Affirmation by General Bar Applicant that the facts in his bar application remained accurate, and misrepresenting to Bar Counsel that he had disclosed all required information. We agree. We are satisfied that clear and convincing evidence supports the conclusion that, with his conduct in violating MLRPC 8.1(a), 8.1(b), and 8.4(c), Slate also violated MLRPC 8.4(d). In sum, Slate's conduct was such that it would negatively affect a reasonable person's perception of the legal profession.

The hearing judge's findings undermine Slate's contention that he did not violate MLRPC 8.4(d) because he merely made a "mistake." As noted above, the hearing judge repeatedly and unequivocally found that Slate's concealment of the Opinions and the findings therein was knowing.

### MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion that Slate violated MLRPC 8.4(a). As discussed above, Slate violated MLRPC 8.1(a), 8.1(b), 8.4(c), and 8.4(d).

### (C) Sanction

Bar Counsel recommends that we disbar Slate, who asks us to dismiss this attorney

- 38 -

discipline proceeding.

In <u>Attorney Grievance Comm'n v. Allenbaugh</u>, 450 Md. 250, 277-78, 148 A.3d 300,

316-17 (2016), this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.
>
> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.
>
> Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline

proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

In Van Dusen, 443 Md. at 416, 116 A.3d at 1015, this Court unequivocally stated:

A lawyer must, at a minimum, be trustworthy. One who wants to be a lawyer in Maryland must disclose to the . . . SBLE[] and this Court information that bears on that trait. Failure to satisfy those requirements may prevent admission to the bar or, when discovered, result in disbarment.

This Court further explained that disbarment is the appropriate sanction where a lawyer conceals material information during the bar admission process, stating:

This Court has also found disbarment appropriate when it is learned that a lawyer concealed material information during the bar admission process. The Court has reasoned that disbarment is warranted because the deliberate failure to disclose material information plainly reflects on the truthfulness and candor of the applicant and no character qualification to practice law is more important than truthfulness and candor. [*Attorney Grievance Comm'n v.*] *Keehan*, 311 Md. [161,] 169, 533 A.2d 278 [(1987)] (disbarring lawyer who withheld material information relating to his prior employment experience); *Hunt*, 435 Md. at 143-44, 76 A.3d 1214 (disbarring attorney who failed to disclose past criminal conduct); [*Attorney Grievance Comm'n v.*] *Gilbert*, 307 Md. [481,] 496-497, 515 A.2d 454 [(1986)] (disbarring an attorney who failed to disclose involvement in a civil suit).

Van Dusen, 443 Md. at 432, 116 A.3d at 1024-25.

Here, Slate violated MLRPC 8.1(a) by responding "No" to Question 18, the catchall question, when he should have disclosed the Opinions and the findings therein. Slate also violated MLRPC 8.1(a) by mispresenting to Bar Counsel that he had provided all required information during the bar application process. Slate violated MLRPC 8.1(b) by failing to supplement his bar application with, or tell Compofelice, Brennan, and Thomas about, the Opinions and the findings therein. Slate violated MLRPC 8.4(c) by concealing the

Opinions and the findings therein throughout the bar application process. Slate also violated MLRPC 8.4(c) by making a false statement to Bar Counsel. Slate violated MLRPC 8.4(d) through his knowing concealment of required information in the bar application process and misrepresentation to Bar Counsel. All of these circumstances have the potential to undermine the public's confidence in the legal profession.

We note five aggravating factors. First, the hearing judge found that Slate had a dishonest or selfish motive, as he concealed material information to get admitted to the Bar of Maryland. Second, the instant circumstances make clear that Slate has engaged in a pattern of dishonesty. Slate engaged in dishonesty by responding "No" to the catchall question; falsely stating under oath that the facts in his bar application remained true; concealing required information during the character interview, as well as the meeting with Brennan and Thomas; failing to supplement his bar application with the required information; and then falsely stating to Bar Counsel that he had provided all required information. Third, Slate committed multiple violations of the MLRPC. Fourth, the hearing judge found that Slate refused to acknowledge his misconduct's wrongful nature, and demonstrated "impenitence[.]" Fifth, Slate's pattern of dishonesty demonstrates that he is likely to repeat his misconduct—*i.e.*, engage in dishonesty.

The hearing judge stated that she did not find any mitigating factors. Upon our independent review of the record, we discern only two. First, Slate has not received prior attorney discipline. Second, Slate lacked experience in the practice of law at the time of his misconduct. He was not yet a lawyer during the bar application process; and, when he made the misrepresentation to Bar Counsel, he had been a lawyer for a little over one year.

- 41 -

We fully agree with Bar Counsel that the appropriate sanction for Slate's misconduct is disbarment. Slate knowingly engaged in dishonesty in multiple instances. He deliberately concealed the Opinions and the findings therein by: responding "No" to the catchall question in his bar application; falsely stating under oath that the representations in his bar application remained accurate; withholding the required information during the character interview and the meeting with Brennan and Thomas; and failing to supplement his bar application. Additionally, Slate misrepresented to Bar Counsel that he had provided all required information. There is little doubt that, had Slate's dishonesty come to light during the bar application process, we would have determined that he lacked the character and fitness necessary for admission to the Bar of Maryland.[19]

At oral argument, when asked about the appropriate sanction, Slate responded that "this is an all-or-nothing scenario." We agree. "[A]bsent compelling extenuating circumstances, disbarment is ordinarily the sanction for intentional dishonest conduct[.]" Attorney Grievance Comm'n v. Mahone, 451 Md. 25, 46, 150 A.3d 870, 883 (2016) (cleaned up). Here, Slate does not contend that there are any compelling extenuating circumstances. Upon our independent review, the hearing judge's opinion is devoid of any facts that could possibly constitute compelling extenuating circumstances.

---

[19]In our assessment of the appropriate sanction, we do not consider the misconduct that the United States District Court for the District of Columbia found to have occurred in the ABC Case. The hearing judge did not address whether Slate violated any MLRPC in the ABC Case, and neither do we. Slate's violations of the MLRPC at issue arise solely from his failure to disclose the Opinions and the findings therein, as well as his misrepresentation to Bar Counsel about having provided all required information. In other words, our focus is solely on Slate's concealment of his past actions, rather than the past actions themselves.

For the above reasons, we disbar Slate.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GREGORY ALLEN SLATE.**