Attorney Grievance Commission of Maryland v. Kevin Mbeh Tabe, AG No. 6, September Term, 2022

**ATTORNEY DISCIPLINE – SANCTIONS – 90-DAY SUSPENSION –** Supreme Court of Maryland* suspended from practice of law for 90 days, with conditions, lawyer who, among other things, failed to competently represent two clients in matters in connection with federal immigration proceedings. In both matters, lawyer failed to deposit fees into trust account. In one matter, lawyer did not appear at preliminary hearing, did not effectively explain asylum process to client, submitted asylum application with several important errors, and lost client's only form of photographic identification. In second matter, lawyer failed to appear, and caused his client to not appear, at merits hearing, and neglected to include required affidavit with motion to reopen.

Such conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.15(a) (Safekeeping Property), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MARPC); Maryland Rule 19-404 (Trust Account – Required Deposits); and Federal Immigration Rules of Professional Conduct for Practitioners, 8 C.F.R. § 1003.102(a)(1), (l), (n), (o), (q), and (r).

*At the time of the filing of the Petition for Disciplinary or Remedial Action in this case, the Supreme Court of Maryland was named the Court of Appeals of Maryland. At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Circuit Court for Anne Arundel County
Case No. C-02-CV-22-000727

Argued: February 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

AG No. 6

September Term, 2022

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

KEVIN MBEH TABE

_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Opinion by Watts, J.



_____

Filed: February 27, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.

Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

This attorney discipline proceeding involves a lawyer who, by his own admission, failed to competently represent two clients in connection with federal immigration proceedings, resulting in adverse outcomes for both. Both clients were asylum seekers in immigration detention when they retained Kevin Mbeh Tabe, Respondent, a member of the Bar of Maryland. Mr. Tabe did not deposit the funds paid by either client into his attorney trust account. In the course of representing the clients in separate matters, Mr. Tabe failed to appear at two hearings, including a merits hearing, which he also caused his client to miss, did not effectively explain the asylum process to a client, submitted an asylum application with several important errors, lost a client's only form of photographic identification, and neglected to include a required affidavit with a motion to reopen a matter.

On April 20, 2022, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed a "Petition for Disciplinary or Remedial Action" against Mr. Tabe, charging him with violating Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.15(a) (Safekeeping Property), 8.4(d) (Conduct that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MARPC); Maryland Rule 19-404 (Trust Account – Required Deposits); and Federal Immigration Rules of Professional Conduct for Practitioners, 8 C.F.R. § 1003.102(a)(1), (l), (n), (o), (q), and (r).

On April 26, 2022, we designated the Honorable Stacy W. McCormack ("the hearing judge") of the Circuit Court for Anne Arundel County to hear this attorney discipline proceeding. On September 19, 2022, the hearing judge conducted a hearing. On November 4, 2022, the hearing judge issued an opinion including findings of fact and

conclusions of law, concluding that Mr. Tabe had violated MARPC 1.1, 1.15,[1] and 8.4(a) and (d); Maryland Rule 19-404; and 8 C.F.R. § 1003.102(a)(1), (l), (n), (o), (q), and (r).

On February 3, 2023, we heard oral argument. For the below reasons, we suspend Mr. Tabe from the practice of law in Maryland for 90 days with the condition of the engagement of an attorney monitor for a one-year period upon reinstatement to the practice of law in Maryland. The attorney monitor's responsibilities shall include, but not be limited to, oversight of workload volume and stress management issues.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On December 17, 2009, we admitted Mr. Tabe to the Bar of Maryland.[2] During his practice of immigration law as relevant to this case, Mr. Tabe maintained a law office in Dallas, Texas. He maintained a Maryland attorney trust account.

### Representation of Fon Halley Fon

After entering the United States seeking asylum in March 2019, Mr. Fon, a citizen of Cameroon, was detained at an immigration detention center located in Pine Prairie, Louisiana, and placed in removal proceedings in the U.S. Immigration Court in Oakdale, Louisiana. Mr. Fon asked his aunt, Dorothy Fongum, to retain Mr. Tabe to represent him, as he believed he would not be released without an attorney's assistance. In May 2019, Ms. Fongum retained Mr. Tabe to file an "Application for Asylum, Withholding Removal

---

[1]In the petition for disciplinary or remedial action, Bar Counsel charged a violation of MARPC 1.15(a) only.

[2]Mr. Tabe also gained admission to the Bar of New York in January 2009 and became licensed to practice law in Cameroon in 2012.

and [Convention Against Torture] Protection" for Mr. Fon and to represent Mr. Fon in immigration court, paying a flat fee of $4,000. Mr. Tabe did not place these funds in an attorney trust account pending the earning of fees or incurring of expenses.

That same month, shortly after Mr. Tabe was retained to represent Mr. Fon, the court held a master calendar hearing[3] which Mr. Tabe knew about, but did not appear at. Based on Mr. Fon's response to the immigration court's inquiry about whether he had an attorney and Mr. Fon's testimony at the disciplinary hearing in this case, the hearing judge found that Mr. Tabe had not informed Mr. Fon that he would not be present at the master calendar hearing. The immigration court rescheduled the hearing for June 6, 2019, because Mr. Tabe was not present. Mr. Fon asked to meet with Mr. Tabe before the rescheduled hearing, and Mr. Tabe said they would meet, but they never did.

At the June 6, 2019 hearing, at which Mr. Tabe appeared, the immigration court ordered Mr. Fon's asylum application be submitted by July 9, 2019. Mr. Tabe gave Mr. Fon a blank asylum application to fill out and return to him, which Mr. Fon did, but the hearing judge found that Mr. Tabe did not "adequately explain the application process to Mr. Fon and failed to review the final application with Mr. Fon before it was filed with the court." On June 27, 2019, Mr. Tabe filed the asylum application and, after doing so, mailed a copy to Mr. Fon. Mr. Fon informed Mr. Tabe of errors in the application regarding his date of birth, his date of entry into the United States, and his mother's name. The hearing

---

[3]"A master calendar hearing is an initial hearing in a federal immigration proceeding." Attorney Grievance Comm'n v. Tatung, 476 Md. 45, 56 n.6, 258 A.3d 234, 241 n.6 (2021).

judge found that Mr. Fon's testimony that Mr. Tabe had not provided the final application to him for review prior to filing it with the court was more credible than Mr. Tabe's testimony that he had done so, in part because of the nature of the errors. After Mr. Fon alerted Mr. Tabe to the errors, Mr. Tabe failed to promptly file an amended application.

In early July 2019, Mr. Tabe received from Ms. Fongum Mr. Fon's original Cameroonian National Identification Card and affidavits related to the asylum application. Mr. Tabe thereafter lost this identification card, which was Mr. Fon's only form of photographic identification, as Mr. Tabe knew. On July 9, 2019, Mr. Tabe appeared at a master calendar hearing telephonically rather than in person, which he had not told Mr. Fon he would do, and which prevented Mr. Fon from meeting with him to discuss details of the case. The immigration court scheduled an individual hearing[4] for Mr. Fon on August 13, 2019. On July 10, 2019, Mr. Tabe filed a pre-hearing brief and additional evidence with the court, which included the affidavits and a copy of the identification card.

Mr. Tabe met with Mr. Fon for the first and only time 2 weeks prior to the individual hearing, for 30 minutes. The hearing judge found that, at this meeting, Mr. Tabe "failed to adequately explain the asylum process to Mr. Fon or prepare Mr. Fon for his upcoming individual hearing." The hearing judge noted that, at the disciplinary hearing, Mr. Fon testified that Mr. Tabe "never explained . . . exactly what [Mr. Fon] need[ed] to prove[,]"

---

[4]"Individual hearings (or merits hearings) are substantive hearings conducted during removal proceedings to adjudicate contested matters, including (1) the charge of removability and (2) any applications for relief from removal, including applications for asylum, [Immigration and Nationality Act] withholding of removal, and withholding and deferral of removal under the Convention Against Torture." Deborah E. Anker, Law of Asylum in the United States Appendix A § A3:25 (2022 ed.) (footnote omitted).

told him that the "asylum claim is not a big deal[,]" and did not go over the questions that he would ask Mr. Fon at the hearing.

When Mr. Tabe returned some original documents to him, Mr. Fon alerted Mr. Tabe that his National Identification Card was missing. Mr. Tabe told Mr. Fon he would find it and bring it to the individual hearing. After Mr. Tabe "discovered that he had misplaced Mr. Fon's original identification card, he failed to advise Mr. Fon or explain to Mr. Fon how the missing identification card could impact his immigration case." Mr. Tabe not only failed to carefully safekeep this important piece of evidence, but also the hearing judge found that there was no evidence that he attempted to recover it.

At the August 13, 2019 individual hearing, the immigration court asked Mr. Tabe about the identification card and Mr. Tabe admitted he could not present it because he had misplaced it. The court relied in part on Mr. Fon's lack of photographic identification in finding that he was not credible[5] and therefore denying his application for asylum and ordering him removed from the country.

In early September 2019, Ms. Fongum retained Mr. Tabe on behalf of Mr. Fon to represent him in his appeal to the BIA. Ms. Fongum paid Mr. Tabe $1,400 toward a flat fee of $2,600, which Mr. Tabe failed to deposit in an attorney trust account. On September 30, 2019, Mr. Tabe filed a brief requesting that the BIA reverse the immigration court's decision and grant asylum to Mr. Fon. On January 13, 2020, the BIA affirmed the

---

[5]However, the BIA, on appeal, ruled that the lack of credibility was irrelevant because, even assuming Mr. Fon's credibility, he had not satisfied his burden for the asylum claim.

immigration court's decision and dismissed the appeal. On September 28, 2020, Mr. Fon filed a complaint against Mr. Tabe with Bar Counsel.

## Representation of Christian Nkwizi

After entering the United States seeking asylum in November 2018, Mr. Nkwizi, a citizen of Cameroon, was detained at an immigration detention center located in Folkston, Georgia, and placed in removal proceedings in the U.S. Immigration Court in Atlanta, Georgia. On January 4, 2019, Mr. Nkwizi retained Mr. Tabe to file an "Application for Asylum, Withholding Removal and [Convention Against Torture] Protection" for him and to represent him in immigration court for a flat fee of $3,000. Mr. Tabe failed to deposit the $3,000 he received for his representation of Mr. Nkwizi into an attorney trust account. The hearing judge found that this fee was not unreasonable at first, but became unreasonable due to Mr. Tabe's subsequent failure to provide services of value to Mr. Nkwizi.

On March 12, 2019, Mr. Tabe filed an application for asylum on Mr. Nkwizi's behalf. On April 17, 2019, Mr. Tabe filed a pre-hearing statement and additional evidence in support of the application.[6] On May 15, 2019, the immigration court scheduled an individual hearing for Mr. Nkwizi for July 10, 2019, which Mr. Tabe received notice of.

On May 23, 2019, Mr. Nkwizi was released from detention on parole and relocated to Boston, Massachusetts to live with family. On June 26, 2019, Mr. Tabe filed a motion

---

[6]At the disciplinary hearing, Mr. Nkwizi testified that his individual hearing was to occur on May 14, 2019, but there was a "microphone malfunction" and the court rescheduled the hearing for July 10, 2019.

to change the venue of Mr. Nkwizi's proceedings to Boston. Mr. Tabe assured "Mr. Nkwizi that the motion to change venue would be granted and advised him that all his future hearings would be held in Massachusetts." However, on July 1, 2019, the immigration court denied the motion to change venue and notified Mr. Tabe of the denial via email. Mr. Tabe failed to read the email regarding the denial of the motion or share it with Mr. Nkwizi.

Relying on Mr. Tabe's representation regarding the change of venue and assuming that the hearing in Georgia was not going forward, Mr. Nkwizi did not appear for his individual hearing on July 10, 2019. Neither did Mr. Tabe, because he assumed the motion had been granted and had not read the email. "Due to his failure to appear, the court deemed Mr. Nkwizi's asylum application to be abandoned and ordered him removed from the United States." On his own initiative, Mr. Nkwizi learned of this order the next day, and contacted Mr. Tabe. Mr. Tabe said he had "missed an email" from the court and "promised" Mr. Nkwizi "that he would get things straight" by filing a motion to reopen the case.

On July 30, 2019, Mr. Tabe filed the motion as he had said he would, arguing that reopening was appropriate because Mr. Nkwizi had not received timely notice that the motion to change venue had been denied. However, Mr. Tabe did not include an affidavit in support of his statements. On August 26, 2019, the immigration court denied the motion to reopen, in part because of Mr. Tabe's failure to include the affidavit. On October 6, 2019, Mr. Nkwizi filed a complaint against Mr. Tabe with Bar Counsel.

**Aggravating and Mitigating Factors**

The hearing judge found seven aggravating factors: (1) prior disciplinary history; (2) a pattern of misconduct; (3) multiple offenses; (4) vulnerability of the victims; (5) substantial experience in the practice of law; (6) indifference to making restitution; and (7) likelihood of repetition of misconduct.

The hearing judge also found four mitigating factors: (1) full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings; (2) remorse; (3) the absence of a dishonest or selfish motive; and (4) personal or emotional problems.

## STANDARD OF REVIEW

In an attorney discipline proceeding, we review for clear error a hearing judge's findings of fact and review without deference a hearing judge's conclusions of law. See Md. R. 19-740(b)(1) (The Court "shall review de novo the [hearing] judge's conclusions of law."); Md. R. 19-740(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Slate, 457 Md. 610, 626, 180 A.3d 134, 144 (2018). We may treat a hearing judge's "findings of fact as established" when neither party excepts to them. Md. R. 19-740(b)(2)(A). We determine whether clear and convincing evidence establishes that a lawyer violated an MARPC. See Md. R. 19-727(c).

## DISCUSSION

### (A) Exceptions to Findings of Fact and Aggravating Factors

#### *Failure to Adequately Prepare Mr. Fon*

Mr. Tabe excepts to the hearing judge's findings that he "failed to adequately

explain the asylum process to Mr. Fon or prepare Mr. Fon for his upcoming individual hearing" and that he only met with Mr. Fon once. Mr. Tabe contends that he explained the asylum process to Mr. Fon throughout his representation, including prior to sending a request for documents to Mr. Fon on June 1, 2019; in two visits, on July 17 and 22, 2019; and by providing Mr. Fon with copies of the filings in the case, including discussing the filings with him on July 25, 2019.

We overrule Mr. Tabe's exception. At the hearing, Mr. Fon testified that Mr. Tabe never properly explained to him the process for seeking asylum and met with him only once to discuss the case. When Mr. Tabe asked Mr. Fon during cross-examination what happened the first time they met, prior to the meeting two weeks before the individual hearing, Mr. Fon testified that the only other meeting consisted of a brief introduction and no substantive discussion. Although Mr. Tabe testified otherwise, the hearing judge was entitled to assess both witnesses' credibility and determine whose account to believe. We defer to the hearing judge's credibility assessment.

### *Failure to Provide Services of Value to Mr. Nkwizi*

Mr. Tabe excepts to the hearing judge's finding that he failed to provide services of value to Mr. Nkwizi and, therefore, charged an unreasonable fee. Mr. Tabe contends that although his actions resulted in the denial of Mr. Nkwizi's asylum application and an order for his removal, Mr. Nkwizi has new counsel who can take advantage of his work on behalf of Mr. Nkwizi should the case be reopened. In addition, Mr. Tabe contends that he has submitted an affidavit of support for the reopening of Mr. Nkwizi's case and refunded the $3,000 fee.

We overrule Mr. Tabe's exception to the hearing judge's finding that that he failed to provide services of value to Mr. Nkwizi and, as such, charged an excessive fee, as the hearing judge did not clearly err in making the finding. It is accurate that, at the disciplinary hearing, Mr. Tabe testified that he worked with Mr. Nkwizi's family and filed Mr. Nkwizi's application for asylum, and that he filed a pre-hearing brief, a witness list, and supporting documents. In addition, Mr. Tabe testified that he had been prepared to represent Mr. Nkwizi at an individual hearing on April 24, 2019, which was rescheduled in advance, and at the May 14, 2019 hearing, at which he appeared, but which was rescheduled due to technical difficulties. Mr. Tabe also testified that in December 2021, he had provided Mr. Nkwizi[7] an affidavit in support of a motion to reopen before the BIA.

This does not establish, however, that Mr. Tabe's services were of value or that the fee he charged was reasonable when his misconduct consisted of him neglecting an email from the court advising that Mr. Nkwizi's motion for change of venue had been denied, and causing Mr. Nkwizi to miss his individual hearing on July 10, 2019 and be ordered removed from the country. Thereafter, Mr. Tabe filed a motion to reopen that was denied by the immigration court because he failed to include a necessary affidavit. Mr. Tabe had been retained for the sole purpose of assisting Mr. Nkwizi in seeking asylum and, through his misconduct, he managed to have Mr. Nkwizi ordered removed from the country. It is axiomatic that when a lawyer files a motion for an extension, a postponement, a change of venue, or the like with a court and has received no response, the lawyer may not act as

---

[7]Mr. Tabe mistakenly referred to Mr. Nkwizi as Mr. Fon in this part of his testimony.

though the motion has been granted and disregard an existing obligation. Mr. Tabe causing Mr. Nkwizi to miss the July 10, 2019 individual hearing after having not read the response from the court advising him of the denial of the motion for change of venue was inexplicable and served to undermine the value of the work he previously performed in the case.

As of December 2021, when Mr. Tabe supplied the affidavit for Mr. Nkwizi's use in a new motion to reopen, Mr. Nkwizi had been ordered removed from the country for over two years, since July 2019. In the meantime, Mr. Nkwizi had retained new counsel whom he was most likely required to pay new fees, in addition to the $3,000 that he had already paid Mr. Tabe.

The hearing judge did not credit Mr. Tabe's testimony that he refunded the $3,000 to Mr. Nkwizi and in his exceptions before this Court (which we discuss more fully below), Mr. Tabe gives no reason for us to disturb the hearing judge's finding. The notion that Mr. Tabe performed valuable work by completing the asylum application and other paperwork that new counsel may now utilize in pursuing Mr. Nkwizi's application is based on the premise that Mr. Nkwizi's case has been or will be reopened, which is an occurrence that is not established by the case record. And, even if it had been confirmed that Mr. Nkwizi's motion to reopen had been granted, under the circumstances of the case, in which Mr. Tabe took a fee, failed to competently pursue the objective of the representation, and, rather, caused Mr. Nkwizi to be ordered removed from the country, necessitating that he obtain new counsel, and over three years later (at the time of the disciplinary hearing) the immigration case was still pending, it would be difficult to conceive that Mr. Nkwizi's

asylum application would now move forward based on the paperwork submitted by Mr. Tabe in 2019 or that Mr. Tabe could be viewed as having provided valuable services.

### *Pattern of Misconduct and Likelihood of Future Violations*

Mr. Tabe excepts to the hearing judge's finding of the aggravating factors of a pattern of misconduct and likelihood of future violations.[8] Mr. Tabe asserts that his actions in the representation of Mr. Fon and Mr. Nkwizi did not constitute a pattern of misconduct because they were two "episodes" that occurred at roughly the same time. Mr. Tabe relies on this Court's holding in Attorney Grievance Comm'n v. Riely, 471 Md. 458, 500-01, 242 A.3d 206, 231 (2020), for the proposition that a finding of a pattern of misconduct should be supported by separate "episodes" of misconduct. For the same reason, Mr. Tabe contends that his actions did not indicate a likelihood of future misconduct.

We overrule Mr. Tabe's exception to the hearing judge's finding of the aggravating factors of a pattern of misconduct and likelihood of future violation, as the hearing judge did not clearly err with respect to the findings. In Riely, this Court declined to overrule the hearing judge's finding that no pattern of misconduct occurred, where the petition

---

[8]In his exceptions, Mr. Tabe states that he excepts to the hearing judge's finding of the aggravating factor of indifference to making restitution. In the exceptions, however, Mr. Tabe does not elaborate on the point and, therefore, to the extent that he intended to except to this finding, we overrule the exception as Mr. Tabe provided no grounds on which to do otherwise. In addition, at the disciplinary hearing, Mr. Tabe testified that he wanted to make full restitution and that he was putting money together to do so. That Mr. Tabe may have eventually fully refunded both Mr. Fon's and Mr. Nkwizi's funds would not change the sanction in this case, because the refund would have "c[o]me long after [the attorney's] dispute with [the client] and after [the client] had filed [a] complaint with Bar Counsel." Attorney Grievance Comm'n v. Miller, 467 Md. 176, 225, 223 A.3d 976, 1005 (2020).

concerned two separate matters set against the context of an attorney's "high-volume immigration practice that, for the prior 30 years, had apparently been without incident." Id. at 501 n.21, 242 A.3d at 231 n.21.[9]  In contrast, in this case, the hearing judge looked to our holding in Attorney Grievance Comm'n v. Chanthunya, 446 Md. 576, 607, 133 A.3d 1034, 1052 (2016), for the proposition that a pattern of misconduct exists where an attorney "engaged in similar misconduct in separately representing two clients[.]"

This case is easily distinguished from Riely.  See Attorney Grievance Comm'n v. Taniform, 482 Md. 272, 302, 286 A.3d 1072, 1089 (2022) (distinguishing the facts of the case from Riely and holding that the attorney's "series of wrongful acts over a period of five months with two different clients" constituted a pattern of misconduct).  Among other differences, in this case, the hearing judge found that Mr. Tabe had been reprimanded by the Commission in May 2019, for misconduct occurring between August 2016 and April 2017 that was substantially similar to that in the present case.  This would establish a pattern in addition to the one revealed by, as the hearing judge put it, the "series of wrongful acts" in Mr. Tabe's representation of Mr. Fon and Mr. Nkwizi.

The reprimand also led the hearing judge to find the aggravating factor of likelihood of future misconduct, because Mr. Tabe's "misconduct continued, despite prior discipline for similar misconduct," in line with our precedent.  See, e.g., Attorney Grievance Comm'n

---

[9]The dissent in Riely would have sustained "Bar Counsel's exception to the hearing judge's finding that the attorney did not engage in a pattern of misconduct" because the attorney "violated the same three" rules of professional conduct "while representing different sets of clients . . . in two different years[,]" which was "sufficient to establish a pattern of misconduct."  Riely, 471 Md. at 509-10, 242 A.3d at 236-37 (Watts, J., dissenting).

v. Edwards, 462 Md. 642, 710, 202 A.3d 1200, 1238 (2019) (This Court stated that the likelihood of the attorney "repeating her misconduct [was] apparent from her continued misconduct even after she was notified of the complaints filed against her."). Although Mr. Tabe's misconduct did not continue after he was notified of the complaints against him in this case, like the attorney in Edwards, he was reprimanded by the Commission for substantially similar misconduct, amidst his representation of the clients at issue. That the reprimand did not prevent Mr. Tabe from engaging in misconduct immediately thereafter is a strong basis for the hearing judge's finding of the aggravating factor of likelihood of repetition, and the hearing judge did not clearly err in so finding.

### *Vulnerability of Victims*

Mr. Tabe excepts to the hearing judge's finding of the aggravating factor of vulnerability of the victims. Mr. Tabe contends that this Court should not consider immigrant status as *per se* evidence of a vulnerable client and that, in this case, neither Mr. Fon nor Mr. Nkwizi was established as individually vulnerable.

We overrule Mr. Tabe's exception to the hearing judge's finding of the aggravating factor of vulnerability of the victims, as the hearing judge's finding is not clearly erroneous. Our precedent, as Mr. Tabe recognizes, establishes the vulnerability of immigrants as clients, in part because "[t]he potential to be removed from the country is a grave risk that is specific to immigrants who do not have permanent status within the United States, thereby making them vulnerable[.]" Attorney Grievance Comm'n v. Moawad, 475 Md. 424, 485, 257 A.3d 611, 647 (2021). Not only did Mr. Tabe's misconduct increase the likelihood of removal for both clients, but also both were especially vulnerable, contrary

- 14 -

to Mr. Tabe's contention otherwise, because both had entered the country recently and been immediately detained, and both were asylum seekers, meaning they alleged having "experienced or fear[ed] persecution for reasons of race, religion, nationality, membership in a particular social group, or political opinion." Deborah E. Anker, Law of Asylum in the United States § 1:1 (2022 ed.). As such, both were recent immigrants who were in custody and vulnerable not only to removal but also to potentially being placed back in a situation in which they had allegedly experienced or had a fear of persecution.

We recognize that there could be some instances in which the aggravating factor of the victim's vulnerability would not apply in a disciplinary matter involving an immigration client. Although in Moawad, 475 Md. at 484-85, 257 A.3d at 646-47, we rejected the attorney's contention that his clients were not vulnerable victims because one was "an accomplished medical doctor with significant education and work history in the United States," and another was "an 'articulate gentleman' who arrived in the country to further his education and has ultimately established a career as an Emergency Medical Technician," there might be a factual scenario in which the vulnerability factor would not apply, such as if the client had extensive experience navigating immigration proceedings or the attorney's misconduct would not result in deportation. "Time will ultimately tell whether we spoke too broadly in *Moawad* and in prior cases," Taniform, 482 Md. at 304-05, 286 A.3d at 1091, but, as in Taniform, here, too, "we are not persuaded on these facts that Mr. [Tabe]'s clients should not be deemed vulnerable for purposes of this aggravating factor."

- 15 -

## (B) Conclusions of Law

### *Bar Counsel's Exception Concerning Application of MARPC 8.5(b): Maryland's Choice of Law Rule*

Bar Counsel excepts to the hearing judge's conclusion that Mr. Tabe violated MARPC 1.1 by failing to competently represent the clients in immigration proceedings. Bar Counsel contends that, instead, under MARPC 8.5(b), the hearing judge should have concluded that the alleged misconduct involving the substance of the representation violated the Federal Immigration Rules of Professional Conduct for Practitioners ("FIRPCP"), and that the violation of MARPC 1.1 resulted from Mr. Tabe's "failure to properly maintain client funds in an attorney trust account[.]" We sustain Bar Counsel's exception.

In February 2005, we adopted MARPC 8.5(b), titled Choice of Law, after changes made in 2000 to the American Bar Association Model Rules concerning the choice of jurisdictional rules to be applied in disciplinary cases. See Taniform, 482 Md. at 329, 286 A.3d at 1105 (Booth, J., concurring). MARPC 8.5(b) provides:

> **Choice of Law.** In any exercise of the disciplinary authority of this State, the rule of professional conduct to be applied shall be as follows:
>
> (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and
>
> (2) for any other conduct, the rules of the jurisdiction in which the attorney's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. An attorney shall not be subject to discipline if the attorney's conduct conforms to the rules of a jurisdiction in which the attorney reasonably believes the predominant effect of the attorney's conduct will occur.

Under the plain language of MARPC 8.5(b), in Maryland, in connection with a matter pending before a tribunal, the rules of the tribunal where an attorney's alleged misconduct occurred must be applied in an attorney disciplinary proceeding, and, as stated in Comment 4 of the Rule, an attorney shall be subject only to the rules of professional conduct of that tribunal. As we explained in Attorney Grievance Comm'n v. Tatung, 476 Md. 45, 88, 258 A.3d 234, 260 (2021), "Rule 8.5(b) [] ensures that, where an attorney's misconduct triggers jurisdiction and oversight by more than one disciplinary authority, the attorney is treated fairly and uniformly by each jurisdiction, as contemplated by the comments" to MARPC 8.5(b).

With respect to immigration matters, the Executive Office of Immigration Review of the United States Department of Justice has established uniform regulations that govern the professional conduct of immigration attorneys. These regulations, the FIRPCP, are codified at 8 C.F.R. Part 1003, Subpart G.

In this case, Bar Counsel filed charges alleging violations of the MARPC and the FIRPCP. The hearing judge found violations of both MARPC 1.1 and 8 C.F.R. § 1003.102(o) based on the same conduct.[10] Under the plain language of MARPC 8.5(b) and

---

[10]Under MARPC 1.1, the hearing judge concluded that Mr. Tabe violated the Rule in both Mr. Fon's and Mr. Nkwizi's cases by failing to provide competent representation. With respect to Mr. Fon, the hearing judge concluded that Mr. Tabe violated MARPC 1.1 by failing to appear at the May 15, 2019 hearing, failing to correct errors on Mr. Fon's asylum application, failing to adequately prepare Mr. Fon for his individual hearing, and losing Mr. Fon's Cameroonian National Identification Card. With respect to Mr. Nkwizi, the hearing judge concluded that Mr. Tabe violated MARPC 1.1 by failing to confirm whether the immigration court had granted the motion to transfer venue, failing to advise

our case law, Mr. Tabe cannot be subject to both sets of rules for the same conduct. Given that the misconduct in this case arises from matters pending before the federal immigration tribunal, the charges in this case should have been pursued under the federal immigration rules, unless the immigration rules do not contain a counterpart applicable to the alleged misconduct. For instance, we have held that "the MARPC do[] not apply to [] alleged conduct involving . . . representation of [] clients in [a] federal immigration proceeding[,]" but

> if an immigration attorney who is licensed in Maryland commits violations of our professional conduct rules related to trust account violations, in addition to filing charges under the federal disciplinary rules contained in 8 C.F.R. § 1003.102, the attorney may also be charged with violating MARPC 1.15(a) because the federal regulations do not contain any counterpart to that rule.

Tatung, 476 Md. at 90-91, 258 A.3d at 262 (footnote omitted).

In Tatung, id. at 71, 258 A.3d at 250, the attorney challenged the propriety, under MARPC 8.5(b), of Bar Counsel charging him with violations of the MARPC "for conduct arising from this representation of his clients in the federal immigration proceedings in Texas[.]" The case represented the first instance in which an attorney had challenged charges filed under the MARPC based on the interpretation and meaning of MARPC 8.5(b)(1) since its adoption. See Tatung, 476 Md. at 73, 258 A.3d at 251. We held that because the attorney's "conduct occurred in connection with the federal immigration court

---

Mr. Nkwizi of the obligation to attend the July 10, 2019 hearing, and failing to appear at the hearing himself. The hearing judge concluded that Mr. Tabe violated 8 C.F.R. § 1003.102(o) "for the same reasons this Court found that [Mr. Tabe] violated MARPC 1.1." The hearing judge also concluded that Mr. Tabe violated MARPC 8.4(d) "for the same reasons [Mr. Tabe] violated [MARPC] 1.1 and 1.15."

proceeding[,]" MARPC 8.5(b)(1) required us to apply the "rules of the jurisdiction where the tribunal sits[,]" *i.e.*, the FIRPCP. Tatung, 476 Md. at 81-82, 258 A.3d at 256-57.

We disagreed with Bar Counsel's argument "that, where the conduct involves another tribunal or jurisdiction, [Bar Counsel] is only required to apply the rules of the alternative jurisdiction when there is a conflict." Id. at 87, 258 A.3d at 260. We held that the use of the word "shall" in MARPC 8.5(b) "plainly and unambiguously mandates the application of the professional rules of the tribunal where the conduct arises in connection with a matter pending before a tribunal," and the other situations delineated by the rule, not "*only* in the event of a conflict." Tatung, 476 Md. at 87, 258 A.3d at 260 (emphasis in original). We also disagreed with Bar Counsel's contention that the attorney's conduct in the immigration proceedings was covered by the MARPC because he had worked from an office in Maryland. See id. at 89, 258 A.3d at 261.

In Attorney Grievance Comm'n v. Bonner, 477 Md. 576, 597, 271 A.3d 249, 262 (2022), after initially charging the attorney under MARPC 8.4(a)-(d), Bar Counsel "subsequently amended its petition" to charge the attorney "with violating D.C. Rule 8.4(a)-(d), as an alternative to the charges filed under the corresponding Maryland Rule[.]" (Emphasis omitted). Ultimately, we held that "the hearing judge correctly applied Maryland Rule 8.5(b) and determined that, because the predominant effect of Mr. Bonner's misconduct occurred in the District of Columbia, the D.C. Rules should apply to the underlying conduct." Id. at 597, 271 A.3d at 262. Bar Counsel withdrew its initial exception "to the hearing judge's application of the D.C. Rules[,]" but maintained a stance "that the hearing judge erred in failing to make legal conclusions under *both* the Maryland

- 19 -

Rules *and* the D.C. Rules" regarding "the same underlying misconduct." Id. at 597-98, 271 A.3d at 262 (emphasis in original).

We overruled Bar Counsel's exception because the plain language of MARPC 8.5(b) "specifically contemplates that *one set of professional rules* should apply to a particular act or acts of conduct." Bonner, 477 Md. at 598, 271 A.3d at 262-63 (emphasis in original). Accordingly, the hearing judge properly made conclusions of law under the professional conduct rules of the District of Columbia, not Maryland. See id. at 600, 271 A.3d at 263. Because rules are not always identical, any other holding would have had the potential to produce inconsistent results. See id. at 600, 271 A.3d at 264. For example, D.C. Rule 8.4(d) holds attorneys to a different standard than its MARPC counterpart, with MARPC 8.4(d) appearing to be a more tempered version of D.C. Rule 8.4(d). See Bonner, 477 Md. at 600, 271 A.3d at 264.

In Bonner, we stated that "if a petition involves charges involving *separate acts of misconduct*, each separate act of misconduct may involve the application of a separate set of professional rules." Id. at 601 n.13, 271 A.3d at 264 n.13 (emphasis in original). We instructed that when MARPC 8.5(b) is implicated, "Bar Counsel should identify the discrete act or acts of misconduct and apply *one set of professional rules* to the particular act or acts of misconduct." Bonner, 477 Md. at 601 n.13, 271 A.3d at 264 n.13 (emphasis in original).

In this case, although in its exception, Bar Counsel states that it charged violations of the MARPC only in relation to Mr. Tabe's attorney trust account misconduct, the petition makes no distinction as to what misconduct was alleged to be in violation of the

- 20 -

MARPC versus the FIRPCP. In accordance with <u>Tatung</u> and <u>Bonner</u>, we recommend that in the future where misconduct implicating MARPC 8.5(b) is concerned, Bar Counsel identify in the petition for disciplinary or remedial action the discrete act or acts of alleged misconduct and the set of professional rules that it contends to have been violated by the particular act or acts of alleged misconduct at issue. In the instant matter, except for the violations of MARPC 1.1 (Competence), 1.15(a) (Safekeeping Property), 8.4(d) (Conduct that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MARPC), and Maryland Rule 19-404 (Trust Account – Required Deposits) that pertain to trust account violations, the FIRPCP apply to the conduct at issue involving the two immigration cases.

### *MARPC 1.1 (Competence)*

"An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MARPC 1.1.

Having resolved Bar Counsel's exception to the hearing judge's conclusion that Mr. Tabe violated MARPC 1.1 by failing to competently represent the clients in immigration proceedings, we conclude that clear and convincing evidence supports the hearing judge's determination that Mr. Tabe violated MARPC 1.1, although not based on the evidence that the hearing judge relied on. As explained above, Bar Counsel charged Mr. Tabe with a violation of MARPC 1.1 and 8 C.F.R. § 1003.102 but did not specify in the petition the misconduct that is alleged to have violated MARPC 1.1 as opposed to the FIRPCP. Nonetheless, in the petition, it is clear that Bar Counsel alleged that Mr. Tabe had engaged

- 21 -

in misconduct by both failing to deposit fees into an attorney trust account and by failing to provide competent representation to Mr. Fon and Mr. Nkwizi in a number of different respects. Although not for the reasons stated, the hearing judge's conclusion that Mr. Tabe violated MARPC 1.1 is correct because "[a]n attorney demonstrates incompetence, and therefore violates [MARPC] 1.1, when he fails to properly maintain his client trust account." Attorney Grievance Comm'n v. Smith, 457 Md. 159, 214, 177 A.3d 640, 673 (2018) (citation omitted). The hearing judge's finding that Mr. Tabe did not deposit the fees from Mr. Fon and Mr. Nkwizi into his client trust account provides the basis for the violation of MARPC 1.1.

### MARPC 1.15(a) (Safekeeping Property)

MARPC 1.15(a) provides:

> An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

Further,

> [u]nless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

MARPC 1.15(c).

Clear and convincing evidence supports the hearing judge's conclusion that Mr.

Tabe violated MARPC 1.15. Without specifying a section of the Rule, the hearing judge concluded that Mr. Tabe's failure to maintain unearned fees in his attorney trust account violated MARPC 1.15. In reaching this conclusion, the hearing judge quoted the substance of MARPC 1.15(a). The hearing judge also referenced MARPC 1.15(c), though not directly, by stating that Mr. Tabe did not obtain informed consent, in writing, to deposit funds directly into his operating account. This discussion plainly constituted a determination that Mr. Tabe violated MARPC 1.15(a), as this is the only section of the Rule for which a violation was charged; the hearing judge relied on the language of the section in finding the violation; and Mr. Tabe's conduct violates this section of the Rule. Mr. Tabe does not except to this conclusion.

### MARPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)

"It is professional misconduct for an attorney to . . . engage in conduct that is prejudicial to the administration of justice[.]" MARPC 8.4(d). "Generally, a lawyer violates M[A]RPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Slate, 457 Md. at 645, 180 A.3d at 155 (cleaned up).

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated MARPC 8.4(d). Failure to "safekeep and maintain client funds" in an attorney trust account can constitute conduct that is prejudicial to the administration of justice. Attorney Grievance Comm'n v. Silbiger, 478 Md. 607, 630, 276 A.3d 53, 66 (2022). Mr. Tabe does not except to this conclusion. Although Mr. Tabe's other misconduct would also appear to negatively impact a reasonable member of the public's

- 23 -

perception of and trust in the legal profession and the legal system, as discussed above, Mr. Tabe's actions other than those related to the attorney trust account are not adjudicated under the MARPC because the misconduct occurred in connection with a proceeding before a federal immigration tribunal.

### MARPC 8.4(a) (Violating the MARPC)

"It is professional misconduct for an attorney to[] violate . . . the" MARPC. MARPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated MARPC 8.4(a). As discussed above, Mr. Tabe violated MARPC 1.1, 1.15(a), and 8.4(d) by failing to deposit fees into an attorney trust account. Mr. Tabe does not except to this conclusion.

### Maryland Rule 19-404 (Trust Account – Required Deposits)

Maryland Rule 19-404 provides:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated Maryland Rule 19-404 for the same reasons that he violated MARPC 1.1 and 1.15(a). Mr. Tabe does not except to this conclusion.

### 8 C.F.R. § 1003.102(a)(1)

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the

public interest if" the attorney "[c]harges or receives, either directly or indirectly . . . , any fee or compensation for specific services rendered for any person that shall be deemed to be grossly excessive." 8 C.F.R. § 1003.102(a)(1). To determine "whether a fee or compensation is grossly excessive[]," factors to consider include:

> The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; and the experience, reputation, and ability of the attorney or attorneys performing the services[.]

Id.

Mr. Tabe excepts to the hearing judge's conclusion of law that he violated 8 C.F.R. § 1003.102(a) by charging Mr. Nkwizi $3,000 but failing to provide legal services of value. Mr. Tabe contends that he provided services of value because he "attended hearings on behalf of Mr. Nkwizi" and "filed his asylum application, legal brief and supporting evidence." Mr. Tabe asserts that if Mr. Nkwizi's case is reopened, the filings that he prepared "will be considered by the [i]mmigration [c]ourt[,]" which demonstrates the value of his services, and that he refunded Mr. Nkwizi's fee. We overrule Mr. Tabe's exception and uphold the hearing judge's conclusion that he violated 8 C.F.R. § 1003.102(a)(1) in the Nkwizi matter.

- 25 -

Clear and convincing evidence supports this conclusion.[11] By way of analogy, under the MARPC, a fee may be reasonable at the time it is charged but later become unreasonable if the attorney fails to earn it or to perform any of the services for which the attorney was paid. See Moawad, 475 Md. at 473, 257 A.3d at 640. In Moawad, id. at 473-76, 257 A.3d at 640-41, we upheld a hearing judge's conclusion that the attorney had charged unreasonable fees when he prepared and submitted various immigration filings in three different client matters but through lack of competence and diligence the filings were unsuccessful, and the attorney retained fees for services that were not rendered in one matter, refused to refund any portion of the fee charged in a second matter, and did not reduce the fee in a third matter. In particular, in one matter, we held that the attorney's law firm's eventual correction of mistakes did not negate the prejudice to the client caused by a lack of competence and diligence. See id. at 475, 257 A.3d at 641. See also Attorney Grievance Comm'n v. Dailey, 474 Md. 679, 692-94, 706, 255 A.3d 1068, 1075-76, 1089 (2021) (This Court upheld a conclusion that the attorney charged unreasonable fees when she received a retainer from a client for assistance with his mother's estate, prepared the required documents, but failed to file them, and did not refund the retainer.). Like the attorney's actions in Moawad, Mr. Tabe's lack of competence and diligence in pursuing Mr. Nkwizi's immigration matter ended in a result that prejudiced Mr. Nkwizi, undercutting the value of his services.

---

[11]We incorporate here our discussion above in Part A concerning the resolution of Mr. Tabe's exception to the hearing judge's finding that he failed to provide services of value to Mr. Nkwizi and, therefore, charged an unreasonable fee.

The hearing judge found that there was no evidence that Mr. Tabe had returned any portion of the attorney's fees paid by either Mr. Nkwizi or Mr. Fon. At the disciplinary hearing, Mr. Tabe testified on his own behalf that he wanted "to make full restitution" and "give back Mr. Nkwizi's $3,000," and that he was "putting the funds together" and hoped to "be able to do that in less than 45 days." That Mr. Tabe may have eventually refunded Mr. Nkwizi's fee does not change this calculus. Mr. Tabe's refund, if provided as he asserts in his exceptions, would not have come until roughly three years after the termination of his representation of Mr. Nkwizi.

### 8 C.F.R. § 1003.102(l)

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the public interest if" the attorney "[r]epeatedly fails to appear for pre-hearing conferences, scheduled hearings, or case-related meetings in a timely manner without good cause[.]" 8 C.F.R. § 1003.102(l).

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated 8 C.F.R. § 1003.102(l). Mr. Tabe failed to appear in the Fon matter for the May 15, 2019 master calendar hearing and in the Nkwizi matter for the July 10, 2019 individual hearing. Mr. Tabe does not except to this conclusion. At oral argument, Mr. Tabe asserted, however, that he did not receive the order from the immigration court denying his motion to change venue prior to the date of Mr. Nkwizi's individual hearing, although he conceded that he should not have assumed that the motion was granted. To be clear, where an attorney does not receive an order or decision from a court on a motion for extension, postponement, or transfer of venue, the attorney must nonetheless appear at

scheduled proceedings. An attorney who assumes that such a motion has been granted and does not attend a scheduled hearing has failed to fulfil the attorney's obligations to a client, without good cause.

### 8 C.F.R. § 1003.102(n)

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the public interest if" the attorney "[e]ngages in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process." 8 C.F.R. § 1003.102(n). Such conduct generally "includes any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct[.]" Id.

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated 8 C.F.R. § 1003.102(n). As described by the hearing judge, Mr. Tabe

> failed to appear for Mr. Fon's May 15 hearing, failed to adequately communicate with Mr. Fon about the asylum application process, failed to ensure that accurate information was included on Mr. Fon's asylum application filed with the court, failed to adequately prepare Mr. Fon for his individual hearing, and lost Mr. Fon's Cameroonian National Identification Card.

With respect to Mr. Nkwizi, the hearing judge aptly observed that Mr. Tabe's "misconduct prevented the immigration court from considering the merits of Mr. Nkwizi's asylum claim." When Mr. Tabe attempted to mitigate this harm by filing a motion to reopen the case, he failed to include a required affidavit, undermining even that effort.

### 8 C.F.R. § 1003.102(o)

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the

- 28 -

public interest if" the attorney "[f]ails to provide competent representation to a client." 8 C.F.R. § 1003.102(o). "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Id. "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners[.]" Id.

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated 8 C.F.R. § 1003.102(o). Mr. Tabe's failures to appear for hearings, filing of Mr. Fon's application with errors in it, failure to prepare Mr. Fon for his individual hearing, loss of Mr. Fon's only form of photographic identification, failure to ascertain the denial of the motion to change venue or to inform Mr. Nkwizi of it, and failure to include a necessary affidavit in the motion to reopen Mr. Nkwizi's matter all exhibited a lack of competent representation.

### 8 C.F.R. § 1003.102(q)

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the public interest if" the attorney "[f]ails to act with reasonable diligence and promptness in representing a client." 8 C.F.R. § 1003.102(q). An attorney's "workload must be controlled and managed so that each matter can be handled competently." 8 C.F.R. § 1003.102(q)(1). An attorney "has the duty to act with reasonable promptness. This duty includes, but shall not be limited to, complying with all time and filing limitations. This duty, however, does not preclude the [attorney] from agreeing to a reasonable request for a postponement that will not prejudice the [attorney]'s client." 8 C.F.R. § 1003.102(q)(2).

- 29 -

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated 8 C.F.R. § 1003.102(q). Mr. Tabe's failures to appear at his clients' hearings and failure to ascertain the status of his motion to change venue for Mr. Nkwizi exhibited a lack of diligence. Mr. Tabe does not except to this conclusion.

### *8 C.F.R. § 1003.102(r)*

Under the FIRPCP, an attorney "shall be subject to disciplinary sanctions in the public interest if" the attorney "[f]ails to maintain communication with the client throughout the duration of the client-practitioner relationship." 8 C.F.R. § 1003.102(r). The rule provides further specifics about the nature of this obligation:

> It is the obligation of the [attorney] to take reasonable steps to communicate with the client in a language that the client understands. [An attorney] is only under the obligation to attempt to communicate with his or her client using addresses or phone numbers known to the [attorney]. In order to properly maintain communication, the [attorney] should:
>
> (1) Promptly inform and consult with the client concerning any decision or circumstance with respect to which the client's informed consent is reasonably required;
>
> (2) Reasonably consult with the client about the means by which the client's objectives are to be accomplished. Reasonable consultation with the client includes the duty to meet with the client sufficiently in advance of a hearing or other matter to ensure adequate preparation of the client's case and compliance with applicable deadlines;
>
> (3) Keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation; and
>
> (4) Promptly comply with reasonable requests for information, except that when a prompt response is not feasible, the [attorney], or a member of the [attorney]'s staff, should acknowledge receipt of the request and advise the client when a response may be expected[.]

8 C.F.R. § 1003.102(r).

Clear and convincing evidence supports the hearing judge's conclusion that Mr. Tabe violated 8 C.F.R. § 1003.102(r). Mr. Tabe failed to adequately communicate with both clients in that he did not meet with Mr. Fon despite requests to do so, did not explain the asylum process adequately to Mr. Fon, failed to inform Mr. Fon of the implications of his loss of Mr. Fon's identification card, and failed to keep Mr. Nkwizi informed of the status of the motion to change venue. In addition, as noted by the hearing judge, Mr. Tabe's failure to seek informed consent from his clients regarding the deposit of their funds into his operating account rather than his attorney trust account constituted a violation of this rule.[12]

### (C) Sanction

Bar Counsel recommends that we indefinitely suspend Mr. Tabe from the practice of law in Maryland. Mr. Tabe recommends that we reprimand him or place him on probation with conditions concerning his practice. In his exceptions, Mr. Tabe advises that, as a result of his experience with this case, he has "identif[ied] a major problem in his law practice[,]" and "undergo[ne] attorney/client relationship trainings; stress management trainings; and client fund account and law office management trainings." Mr. Tabe also states that he is undergoing therapy to help him focus on his law practice.

In Slate, 457 Md. at 646-47, 180 A.3d at 155-56, we stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court

---

[12]This misconduct was not covered by any MARPC charged as Mr. Tabe was not charged with violating MARPC 1.15(c).

- 31 -

accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the M[A]RPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

In Attorney Grievance Comm'n v. Moore, 447 Md. 253, 260-64, 135 A.3d 390,

394-96 (2016), an attorney, who had previously been reprimanded by this Court, mishandled two immigration matters by not communicating effectively with his clients, not pursuing potentially effective relief, and failing to file the proper paperwork in one case because he thought he had done so but did not take steps to confirm his assumption. The attorney's misconduct resulted in the continued threat of deportation to one client and the failure of immigration authorities to consider the merits of a matter for the other. The attorney "performed virtually no work" for one client and "performed little to no services" for the other client, and "failed to communicate *at all*" with one client for nearly eight months and "frequently failed to communicate" with the other client "at all[.]" Id. at 266-68, 135 A.3d at 398 (emphasis in original). The attorney did not except to any of the findings of fact and we upheld the hearing judge's conclusions that the attorney had violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC")[13] 1.1, 1.3, 1.4, 1.16, 8.1(b), and 8.4(d). See id. at 259-60, 265-66, 135 A.3d at 394, 397. Although his violations and their consequences were serious, the attorney had not engaged in intentional dishonesty and had proven mitigating factors regarding unaddressed psychological issues, leading this Court to indefinitely suspend him. See id. at 273-74, 135 A.3d at 401-02. The attorney's prior reprimand for similar violations was part of the basis on which we determined that a lesser sanction would not be appropriate. See id. at 274, 135 A.3d at 402.

In Taniform, 482 Md. at 324, 286 A.3d at 1102, an immigration attorney was

---

[13]Prior to July 1, 2016, the MARPC were known as the Maryland Lawyers' Rules of Professional Conduct, or MLRPC.

intentionally dishonest "on matters going to the heart of the representation of his clients, including the status of their matters and his actions" and "knowingly and intentionally misrepresented facts to his clients, their representatives, and Bar Counsel." The attorney "failed to promptly refund money to his clients, failed to properly communicate with them, and, as he acknowledged, neglected his clients' matters and provided incompetent representation." Id. at 324, 286 A.3d at 1102. We concluded that the attorney violated MARPC 1.1, 1.3, 1.4(a) and (b), 1.15, 1.16(d), 4.1, 8.1(a) and (b), and 8.4(a), (c), and (d), and Maryland Rule 19-407. See id. at 305, 286 A.3d at 1091. Although the final outcome of the clients' cases was unknown to this Court, we determined that even if the clients were not deported, the attorney had harmed them with his misconduct. See id. at 324-25, 286 A.3d at 1102. Despite the "aggravating factors of a dishonest or selfish motive, a pattern of misconduct, and the victims' vulnerability[,]" we stated that "the nature of the dishonesty and the mitigating factors . . . nudge[d] us toward a slightly less severe sanction." Id. at 325, 286 A.3d at 1102. The mitigating factors included the attorney's lack of experience, personal and emotional problems, a lack of prior discipline, and an unlikelihood of repetition of the misconduct, provided he received counseling and established a practice management system. See id. at 325, 286 A.3d at 1102-03. We concluded that the appropriate sanction was an indefinite suspension, with the right to apply for reinstatement after 18 months, provided the attorney: (1) had demonstrated, by report from a mental health professional, fitness to resume the practice of law, and (2) engaged an attorney monitor for a year following reinstatement. See id. at 325-26, 286

A.3d at 1103.[14]

In Riely, 471 Md. at 495-500, 242 A.3d at 228-31, the attorney violated MLRPC 1.1, 1.3, 1.4, 1.16(d), 4.1(a)(1), 8.1(a), 8.4(c), 8.4(d), and 8.4(a) while representing clients in two immigration matters. In one matter, the attorney failed to appear at proceedings on behalf of a Guatemalan couple seeking asylum or communicate to them that he would not be doing so. See id. at 466, 242 A.3d at 211. The attorney's misconduct resulted in a missed deadline, "with serious potential consequences for the couple." Id. at 466, 242 A.3d at 211. In a second matter, the attorney "did not act on the timetable for obtaining [an] extension [of a Venezuelan client's employment-based visa] that he himself had specified[,]" placing the client "in jeopardy of removal from the country." Id. at 466-67, 242 A.3d at 211. In both matters, the attorney did "nothing whatsoever to advance the [] cause or endeavor" of the clients. Id. at 495, 242 A.3d at 228 (cleaned up). The attorney also made intentional false statements to a client, to an immigration official, and to Bar Counsel, in an effort to conceal his misconduct. See id. at 497-99, 502, 242 A.3d at 229-30, 232. This Court determined that the appropriate sanction was an indefinite suspension with the right to apply for reinstatement no sooner than one year. See id. at 507, 242 A.3d at 235.

In this case, Mr. Tabe violated MARPC 1.1, 1.15(a), and 8.4(d) and (a), Maryland

---

[14]After Mr. Tabe's representation of Mr. Fon ended, Mr. Taniform was retained to represent Mr. Fon in connection with the same immigration matter. See Taniform, 482 Md. at 286-87, 286 A.3d at 1080. In Taniform, id. at 325-26, 286 A.3d at 1103, Mr. Taniform was indefinitely suspended from the practice of law in Maryland with the right to apply for reinstatement after 18 months, with conditions, in part for misconduct related to his representation of Mr. Fon.

Rule 19-404, and 8 C.F.R. § 1003.102(a)(1), (l), (n), (o), (q), and (r) by, among other things, failing to competently and diligently represent his clients, resulting in adverse rulings for them, losing a client's only photographic identification card, and failing to place client funds into an attorney trust account. Mr. Tabe's mental state was one of negligence, and his misconduct injured his clients because it increased their risk of deportation.

We note the same seven aggravating factors as the hearing judge: (1) prior disciplinary history; (2) pattern of misconduct; (3) multiple offenses; (4) vulnerability of the victims; (5) substantial experience in the practice of law; (6) indifference to making restitution; and (7) likelihood of repetition of misconduct. We also note the same four mitigating factors: (1) full and free disclosure to Bar Counsel and a cooperative attitude toward the proceedings; (2) remorse; (3) the absence of a dishonest or selfish motive; and (4) personal or emotional problems.

We conclude that the appropriate sanction for Mr. Tabe's misconduct is a 90-day suspension from the practice of law in Maryland, with conditions upon reinstatement. Mr. Tabe's argument for a second reprimand is not persuasive because of his substantial experience with the law, prior reprimand for substantially similar misconduct, and the serious negative repercussions of his actions. See Attorney Grievance Comm'n v. Collins, 477 Md. 482, 524, 270 A.3d 917, 942 (2022) ("[A] reprimand may be appropriate when, among other reasons, there is no specific intent and the charged attorney is either a neophyte who expeditiously admits to misconduct, or lacks a disciplinary record." (Cleaned up)).

The overall circumstances of this case are somewhat similar to those of Moore, 447

- 36 -

Md. at 273-74, 135 A.3d at 401-02, in which we ordered a sanction of indefinite suspension: lack of competence, diligence, and communication in the representation, resulting in negative outcomes for clients in immigration proceedings, with the attorney having previously received a reprimand for similar misconduct and struggling with personal issues. There are key factual differences, however, that convince us that a lesser sanction is appropriate. Unlike in Moore, id. at 266-67, 135 A.3d at 398, where the attorney "performed virtually no work" in two cases, here, Mr. Tabe provided some of the services he was hired for, but he significantly undercut the usefulness of his work with serious mistakes. Further, Mr. Tabe was fully cooperative with the disciplinary process, unlike the attorney in Moore, id. at 269-70, 135 A.3d at 399-400, who failed to respond to requests from the Commission regarding the complaints filed against him. In addition, although Mr. Tabe surely had lapses in communication, they fell short of those of the attorney in Moore, id. at 268, 135 A.3d at 398-99, who at times totally failed to communicate with clients.

For similar reasons, Mr. Tabe's misconduct was less severe than the attorney's in Taniform, 482 Md. at 306-07, 286 A.3d at 1091-92: Mr. Tabe actually performed work on behalf of his clients and did not mislead them into believing that he had done work that he had not. Most significantly, Mr. Tabe's conduct did not involve any intentional dishonesty, whereas the attorney in Taniform, id. at 324, 286 A.3d at 1102, made intentional misrepresentations to clients, their representatives, and Bar Counsel. We see a distinction between a lawyer who does essentially no work on behalf of a client and either ignores the client's requests for updates on a matter or misrepresents that he has done the work (*i.e.*,

the attorney in <u>Taniform</u>), and one who performs work requested by the client but undermines it with serious errors (*i.e.*, Mr. Tabe).

Mr. Tabe's conduct in this case is also less serious than that of the attorney in <u>Riely</u>, 471 Md. at 505, 242 A.3d at 234, primarily because of the lack of intentional dishonesty. Specifically, the attorney in <u>Riely</u> not only misled a client and an immigration official, but also engaged in deceptive practices during the disciplinary process to cover up his mistakes. <u>See id.</u> at 505, 242 A.3d at 234. In contrast, Mr. Tabe was generally candid with his clients and Bar Counsel and owned up to his errors. Mr. Tabe's efforts on behalf of his clients also differed markedly from those of the attorney in <u>Riely</u>, which were characterized by a failure "to make any meaningful effort to advance the immigration cases[.]" <u>Riely</u>, 471 Md. at 495, 242 A.3d at 228.

For all of these reasons, we suspend Mr. Tabe from the practice of law in Maryland for 90 days with the condition of the engagement of an attorney monitor for a one-year period upon reinstatement to the practice of law in Maryland. The attorney monitor's responsibilities shall include, but not be limited to, oversight of workload volume and stress management issues. The suspension will commence 30 days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KEVIN MBEH TABE.**